## LATHAM, GUARDIAN, Etc. *v.* LATHAM.

No. 39470 February 28, 1955 78 So. 2d 147

*Pyles & Tucker,* Jackson; *Willard L. McIlwain,* Greenville, for appellant.

266

*Dent, Ward & Martin,* Vicksburg, for appellee.

GILLESPIE, J.

This case has a background of litigation beginning in 1945. We state only so much of the history of the case as is necessary to understand the issues and disposition of the present suit. The Lathams were married in 1936. Two children were born of the union,—Gerald and Madeleine. Marital trouble developed and Mr. Latham was granted a divorce by the District Court of Ouachita Parish, Louisiana, on June 4, 1947. Mrs. Latham was granted the custody of the children, and Mr. Latham was ordered to pay each of the children $100 per month for their support. No alimony was granted Mrs. Latham. The Supreme Court of Louisiana affirmed the case Feb-

ruary 13, 1950, Latham v. Latham, 216 La. 791, 44 So. 2d 870. Mrs. Latham took the children to New York in 1948, where she has since made her home. Latham remarried in 1950 and now has two small sons by his present wife.

The Louisiana judgment gave Mr. Latham rights of visitation with the children and the right to have the children one month each summer. Mr. Latham saw the children very little after 1947, and prior to 1951 was never able to have them for their summer visit.

In the summer of 1951, Mr. Latham visited his son Gerald while the latter was attending Culver Summer Camp in Indiana. Shortly thereafter, Gerald left the summer camp and went to his father in Vicksburg. This happened after Gerald became 14 years of age. Gerald decided to stay with his father and entered school in Vicksburg. On September 11, 1951, Mr. Latham filed a petition in the Chancery Court of Warren County, Mississippi, seeking to modify the Louisiana judgment relative to the custody of Gerald. On January 24, 1952, when Mrs. Latham and her counsel were present, a decree was entered by agreement of all parties providing that (1) Gerald was to spend the summer of 1952 with Mrs. Latham, (2) Gerald would continue in school at the Vicksburg High School for the 1951-1952 term, after which if the parents could not agree on a school for Gerald to attend, the boy could select his own accredited school, (3) Mr. Latham was to pay all of Gerald's expenses, including school expenses, (4) Gerald was to divide his vacation periods between the parents after the summer of 1952, and (5) Mr. Latham was to pay Mrs. Latham $200.00 per month for Madeleine's support, of which $100.00 per month could be paid to the school attended by Madeleine. Gerald has since stayed in Mississippi and attended the Vicksburg High School.

In the summer of 1953, Gerald went to New York to visit his mother. While there, he and Madeleine left for

Mississippi without advising Mrs. Latham they were leaving, and apparently much to her surprise. Madeleine had a right under the Louisiana judgment to visit her father for a month during the summer of 1953. At the end of the month's visit, Madeleine declined to return to her mother, although Mr. Latham advised her it was her duty to do so, but he declined to demand that Madeleine leave his home and return to New York. Mr. Latham enrolled Madeleine at All Saints' College at Vicksburg, Mississippi.

Mr. Latham filed a petition in the Chancery Court of Warren County, Mississippi, seeking to have the Louisiana decree modified as to Madeleine so that he might have her custody, and alleged therein changed circumstances warranting the modification of the Louisiana judgment as to her custody. The same day, Mr. Latham was appointed guardian of the person and estate of Madeleine, who, in writing, selected her father as her guardian. Mrs. Latham filed a motion to dismiss the guardianship proceeding and a petition for writ of habeas corpus for the custody of both children, claiming therein that the Louisiana decree was valid and binding on the parties and that the courts of Mississippi did not have jurisdiction of the children or their custody. All these proceedings, except the motion to set aside the guardianship, were consolidated by agreement of the parties.

A hearing was had on September 18, 1953, with all parties and their counsel present. At its conclusion, the court entered a decree (1) sustaining the motion of Mrs. Latham to dismiss the guardianship proceedings, (2) dismissing the habeas corpus proceedings, (3) continuing in force the decree of the Chancery Court of Warren County, Mississippi, dated January 24, 1952, insofar as it affected Gerald, but modifying it as to the support of Madeleine, (4) continuing in force the Louisiana decree as to Madeleine except as modified, (5) allow-

ing Madeleine, at her election, to remain at All Saints' College for the remainder of the 1953-1954 school term, Mr. Latham to pay all her expenses, including a trip to visit her mother at Christmas, if Madeleine elects to visit her mother at that time, (6) continuing the custody of Madeleine in Mrs. Latham, with the right in Madeleine to select a nationally accredited school to attend, and allowing Madeleine to elect as to how much time she shall spend with each parent during each year, (7) requiring Mr. Latham to pay all living, school, and traveling expenses of Madeleine, (8) directing Mr. Latham to pay Mrs. Latham $50.00 per month under certain conditions to assist her in maintaining a home where the children could visit, (9) directing Mr. Latham to pay Mrs. Latham $92.00 expenses and $400.00 for her attorneys.

The appellant, Mrs. Latham, first assigns as error the action of the Chancery Court of Warren County in taking jurisdiction of Mr. Latham's motion to modify the Louisiana custody decree rendered in June, 1953. She contends that the decrees of the Chancery Court of Warren County dated June 24, 1952, and September 18, 1953, were void for lack of jurisdiction. At the time the Louisiana decree was rendered, and since, Mr. Latham was domiciled at Vicksburg, Warren County, Mississippi. The domicile of a child of divorced parents is that of the parent to whom its custody has been awarded. 17 Am. Jur., Domicile, Sec. 59. An infant can not of its own volition acquire a domicile. 17 Am. Jur., Domicile, Sec. 57.

We do not deem it necessary to decide whether Mrs. Latham's taking the children from Louisiana without approval of the courts of that State affected their domicile. The children were either domiciled in Louisiana or New York. Mississippi was not their domicile. ■■ ■ At the time Mr. Latham filed his petition to modify the Louisiana decree as to Gerald in 1951, and at

the time he filed the petition to modify the Louisiana decree as to Madeleine in 1953, each child was temporarily in Mississippi, and in both instances, had overstayed the visit with their father, and in each instance had declined to return to the mother in New York. ██ █ It is the general rule that jurisdiction to control, determine, and regulate the custody of, an infant is in the courts of a State where the infant legally resides, and the courts of another State are without power in the premises, and can not obtain jurisdiction for such purpose over persons temporarily within the State.

"However, if the child is actually within the jurisdiction of the court, the court may determine claims as to his custody, although his legal domicile is elsewhere, and regardless of the domicile of its parents; nor in the case of a non-resident parent, is the court's jurisdiction dependent on a judgment of the foreign state." 43 C. J. S., Infants, Sec. 5, p. 33.

 █ The rule is well established by the great weight of authority that jurisdiction in child custody cases does not depend upon legal domicile but where the child is actually residing and physically present within the territorial jurisdiction of the court, such court takes and has such jurisdiction by virtue of the doctrine of parens patriae regardless of the legal domicile of the child. The cases on the subject are numerous and we cite some of the late representative decisions. Bassett v. Bassett, 56 N. M. 739, 250 P. 2d 487; Reed v. Reed, et al, 152 Neb. 819, 43 N. W. 2d 161; Eddy v. Staufer, (Fla.) 37 So. 2d 417; Clemens v. Kinsley, (Idaho) 239 P. 2d 266. One of the leading cases on the subject is that of Wicks v. Cox, (Texas) 208 S. W. 2d 876, 4 A. L. R. 2d 1, wherein the principle underlying the rule was stated as follows:

"The principle underlying jurisdiction of the subject matter in child custody cases is the welfare of society, primarily as evidenced by the welfare of the child, but involving also the right, and, for that matter, the duty,

of a state, being the relatively independent sovereign that it is, to look after the welfare of individuals within its borders, as well as the duty of such state to contribute toward the orderly administration of justice under our federal system by paying due heed to existing relationships on the part of the child or other persons concerned with other states, whether within or without the scope of the full faith and credit clause of the federal constitution. Ordinarily the courts of the domiciliary state are in a better position to pass intelligently on the matter of the child's welfare, and good order frequently requires that they do so to the exclusion of courts of other states in which the child is temporarily resident. But where the latter are in a more or less equally good position to determine the child's best interest, and their doing so appears to involve no particular prejudice to good order or social welfare, they have jurisdiction."

Following Wicks v. Cox, supra, beginning at 4 A. L. R. 7, is an elaborate annotation on the question of jurisdiction to award custody of a child having legal domicile in another state. Cf. Cole v. Cole, 194 Miss. 292, 12 So. 2d 425.

Appellant next urges that the trial court erred in failing to give full faith and credit to the original judgment of the Louisiana court. The 1947 judgment of the Louisiana court granted Mrs. Latham custody of the children "until the further orders of this court." The Louisiana judgment was not irrevocable. It was subject to change or modification at any time when a change of conditions demanded it. Pullen v. Pullen, (La.) 109 So. 400. ██ ██ A judgment has no constitutional claim to a more conclusive or final effect in the state of the forum than it has in the state where rendered. ██ ██ If Louisiana could change or modify the custody judgment, the court having jurisdiction of the children could likewise change or modify the judgment. ██ ██ Such judgments, having no final or conclusive effect where rendered, have

no constitutional claim under the full faith and credit clause of the constitution to final and conclusive effect in the state of the forum. People of the State of New York v. Halvey, 330 U. S. 610, 91 L. Ed. 1133; Reed v. Reed, supra.

Appellant contends there had not been such change of circumstances in regard to the condition of the minor children as to justify a modification of the Louisiana judgment. The children involved in this case were about 8 and 10 years of age when the Louisiana judgment was rendered, an age when a mother's care was an important consideration. They then lived in Louisiana, a relatively short distance from their father and other relatives. The children lived in a small town where their friends were. After the divorce, they were removed a thousand miles away from their customary surroundings, their friends, their father, and relatives. After their removal from Louisiana they went from school to school, Gerald changing school nine times, and Madeleine a lesser number of times. Each child spent the summers in summer camps. Madeleine testified that she had practically no friends in New York. Under the decree of the lower court, these children have available to them a good home, are stabilized in their environment, and enjoy the security of continuity of home and school life. They are afforded the opportunity to make permanent friends, and to live in the area of their background. The home of their father is conclusively shown to be a happy one, and the chancellor was fully justified in finding the father a fit and suitable person to rear the children while they are with him. There is nothing in the record derogatory to the character of either parent.

But perhaps the greatest and most significant change is that which time has wrought. At the time of the lower court's decree in September, 1953, the children were 14 and 16 years of age, and by the time this opinion is handed down, they will be approximately 16 and 18

years of age. Gerald is the older. Both children have now long since passed the age of 14 years, when a minor may be permitted to select his own guardian. Mississippi Code of 1942, Sec. 404. Both children have expressed unqualified preference to be with their father. The decree of the lower court gives effect to such preference by allowing the children wide latitude in determining what amount of time they will spend with each parent and what school they attend. ''The preference of a child who is of sufficient age to exercise discretion in choosing its custodian is entitled to considerable weight, especially where the dispute is between the parents.'' 67 C. J. S., Parent and Child, Sec. 12, p. 656. Eddy v. Staufer, supra. ██ ██ There was ample proof of changed conditions in regard to the children warranting a modification of the original custody judgment.

██ ██ The matter of the custody of minor children is one for determination of the chancellor, whose discretion in such matters will not be disturbed on appeal unless manifestly wrong. He saw and observed the children and the contending parents; he considered the facts and circumstances and the relative benefits and advantages of the alternatives presented to him. The chancellor considered all the pertinent factors with the best interest and welfare of the children as his guide. He decided the issue, and a most careful scrutiny of this record reveals no ground for us to disturb his decree.

██ ██ Appellant next contends that Mr. Latham had no standing in court because he had not complied with the prior decree in that he failed to make payments to Mrs. Latham under the January 24, 1952 decree. The chancellor was justified in finding that Mr. Latham had substantially complied with the former decree. It is shown that appellee had paid out more than he was required to pay in the former decree, albeit not in strict accordance therewith.

██ ██ The chancellor allowed Mrs. Latham $92.00 expenses, and $400.00 attorneys' fees. Appellant contends the attorneys' fee was inadequate and Mr. Latham cross-appeals and contends that no fee or expenses should have been allowed. Appellee relies on Robinson v. Robinson, 112 Miss. 224, 72 So. 923. Appellant contends that the later case of Walters v. Walters, 180 Miss. 268, 177 So. 507, applies to this case. It seems that this Court has departed from the rule laid down in Robinson v. Robinson, supra, in the Walters case and in Castleberry v. Castleberry, 214 Miss. 94, 58 So. 2d 67. The chancellor was authorized to make the allowance of expenses and attorneys' fees under the last cited cases. ██ ██ We think a larger fee should have been allowed, but it was a matter within the sound discretion of the chancellor, and we do not think it could here be said that he was manifestly wrong in that regard.

We have disposed of the precise questions presented by this appeal. There are other considerations running through this case and clearly addresses itself, we think, in a general way, to equity. We think it merits some comment. Mr. Latham is a rich and successful man with a very large income. The Louisiana court allowed $200.00 per month for the support of both children. Mrs. Latham has worked since the Louisiana judgment, whether from choice or necessity is not revealed by the record. It is contended that she had the burden and care of these children during the early years of their upbringing without the father's help except the $200.00 per month, and that as soon as each child reached the significant age of fourteen years, Mr. Latham enticed them to Mississippi by dangling before them a life of wealth and material things; that the adolescent children naturally succumbed to such enticement, and readily left the mother who had furnished them, to the best of her ability, a loving home and good training. The evidence was sufficient for the chancellor to find that Mr. Latham was not guilty of

any bad faith. All these considerations, however, merge into the larger issue, which was: What was best for the welfare of the children.

We have given searching consideration to every contention made by appellant, and we are not at all unmindful of the plight of the mother. She nurtured these children to the bloom of young manhood and womanhood, and now is deprived of their companionship. But no court has the power, and no judge the wisdom, to make a decree in a case such as this that would be sufficient to erase the wages of human error.

Affirmed on direct and cross-appeal.

*Hall, Lee, Kyle,* and *Arrington JJ.,* concur.