## Earwood *v.* Cowart

No. 40669 February 17, 1958 100 So. 2d 601

*T. Upton Sisson,* Gulfport, for appellant.

*Bidwell Adam,* Gulfport; *Jackson & Ross,* Jackson, for appellee.

ROBERDS, P. J.

This proceeding involves the correctness and the power of the chancellor in modifiying a former decree which adjudicated, as between the parents, the right to the care and custody of their minor daughter, Murida Kay Cowart.

Appellant contends that there had been no such change in the facts and circumstances since the original decree as to justify the modification of that decree. Appellee contends that the changed circumstances did warrant entrance of the modifying decree. The chancellor sustained the contention of appellee, and this appeal was prosecuted by Mrs. Earwood, the appellant, and the

mother of said minor, and formerly the wife of Ernest Stanley Cowart, Jr.

Appellant and appellee were married April 5, 1946. On January 11, 1949, Murida Kay Cowart was born of that marriage. On April 15, 1955, a decree of divorce between them was entered upon the bill of Mrs. Cowart. That decree awarded the custody of Murida Kay Cowart to the mother, with the right in Mr. Cowart to have the custody of said minor child on Saturday and Sunday of each other week-end until further orders of the court. The decree ordered Cowart to pay to Mrs. Cowart $45 per month as support for the said minor child.

In September 1956 appellee Cowart filed a petition in this cause asking for a modification of the decree of April 15, 1955, setting out in detail certain alleged facts which petitioner asserted constituted grounds for such a modification. On February 7, 1957, the chancellor, after an extended hearing, found that it would be to the best interest of the child to modify the former decree. It then adjudicated that the care, control and custody of Murida Kay Cowart, minor, be awarded to both appellant and appellee under the following conditions: That the child should be under the control and custody of her mother during the school months and school period, and in the care, control and custody of the father during the summer or vacation months; that during the period of control and possession of the mother, the minor should be delivered to the father on each Friday and returned to the mother by 7 P. M. the following Sunday, and that during the summer months, when the father should have care and control of the child, that the mother would have possession of her from Friday to Sunday of each week, and that such care and custody should alternate between the father and mother during the Christmas holidays. The decree forbade the removal of the minor from the jurisdiction of the court unless expressly permitted by an order of the court. The decree imposed upon the father the duty to pay to the mother $45 per month for

the support and maintenance of the minor on the same terms and under the same conditions as provided in the decree of April 15, 1955.

The question confronting us is whether the chancellor was justified in modifying the decree of April 15, 1955, as above set out.

On April 23, 1955, Cowart remarried. On December 21, 1955, Mrs. Cowart married William J. Earwood. From the time of the divorce to the date of the decree herein the following pertinent events and facts, as the chancellor could have deduced from the proof, developed: Mr. Earwood was in the military service of the United States at Keesler Field, Mississippi. He had been convicted of numerous criminal offenses, most of them minor, and most of them before he went into the military service, and some of which offenses had been committed shortly before his marriage to Mrs. Cowart. It is also shown that on at least one occasion personal difficulties occurred between him and Cowart. It should be stated, however, that Earwood appears to have been very fond of Murida Kay, and that since his marriage he has undertaken to overcome the human frailties to which he had been so often subjected in the past. He and his wife instituted proceedings to adopt Murida Kay but without success. Mrs. Earwood worked in the daytime at a garment plant located a distance of some five blocks from the apartment occupied by them. During the absence of Mr. and Mrs. Earwood from their home Murida Kay was in the care of a Mrs. Willis. Mrs. Willis operated what is called an acrobatic school, which was attended by Murida Kay after her regular school hours. The Earwoods resided in an upstairs apartment located in what was formerly a grocery store. This apartment consisted of a kitchen, living room, bedroom and bath. Mr. Earwood had a nephew who was eighteen years of age and who spent several months with the Earwoods. All four, that is Mr. and Mrs. Earwood, the minor child who was

then about eight years of age, and the nephew, lived and slept in this apartment. It should be stated that the nephew and the child did not sleep in the same room. It should also be stated that Mrs. Earwood loved Murida Kay very much. It is further shown that Mr. Earwood might be transferred to some distant place at any time. He expressed an intention that in such event he would expect to take the minor child with him.

On the other hand, there is ample testimony to establish these facts as to Mr. and Mrs. Cowart: They own a nice home in Biloxi, consisting of two bedrooms, living room, dining room, bath, kitchen and utility room. Mr. Cowart is employed locally and he has an income of $63 per week. The present Mrs. Cowart does not work. She keeps the home. The home of the Cowarts is nearer and much more convenient to the public school than the apartment of the Earwoods. The father is intensely devoted to the child. He had begun to accumulate a fund with which to send Murida Kay to college. The present Mrs. Cowart is also very much attached to Murida Kay. It is shown that she has, with her own hands, prepared various articles of clothing for the child, that she is a lady of good reputation and attends church and Sunday School. It is shown that the Cowarts have ample yard space for playground and also equipment and other facilities for the physical well-being of the minor.

We might detail other testimony introduced by both parties but we think the foregoing is sufficient for proper guidance to a correct conclusion in this case.

 █ It is the rule, as stated by appellant, that a former adjudication is res judicata in a subsequent proceeding to modify a former decree of care and custody where there is no substantial change in the facts. Sections 227, 296, Divorce and Separation in Mississippi by Amis; Cassell v. Cassell, 211 Miss. 841, 52 So. 2d 918; Savell v. Savell, 49 So. 2d 726 (Miss.); Jones v. Jones, 227 Miss. 1, 85 So. 2d 580.

On the other hand, under Section 2743 of the Miss. Code of 1942, the chancery court "may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage * * *". The guiding star in such cases is the best interest of the minor child. Section 211, Amis on Divorce and Separation in Mississippi. The chancellor has broad discretion in such matters. Bland v. Stoudemire, 219 Miss. 526, 69 So. 2d 225; Latham v. Latham, 223 Miss. 263, 78 So. 2d 147. This Court should not disturb the action of the chancellor in such matters unless such action is manifestly not warranted. Evans v. Evans, 195 Miss. 320, 15 So. 2d 698; Lewis v. Lewis, 227 Miss. 862, 87 So. 2d 90.

It will be noted that the modifications here made were not of a major character. The decree of modification really retained in both parents the care and custody of the child, with some detailed alterations as to the possession and visiting rights of the parents. The extent of the modification was a matter which was considered in the case of Evans v. Evans, supra. The chancellor saw and heard the parties and their witnesses at this hearing. He was in a much better position than are the members of this Court to evaluate the elements and factors bearing upon the welfare of this minor child. He was on the ground. If subsequent events should establish that the action taken is not for the benefit of the child, the decree can again be modified to meet those conditions. It is clear that this Court under the facts of this case has no ground to reverse what the chancellor did.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.*, concur.