480 So.2d 1150 (1985)
Linda Kay K. Moseley CROWSON
v.
Richard Henry MOSELEY.
No. 55018.
Supreme Court of Mississippi.
November 27, 1985.
Harvey B. Ray, Ray & Cobb, Meridian, for appellant.
Richard E. Wilbourn, Wilbourn & Rogers, Meridian, for appellee.
Before WALKER, P.J., and HAWKINS and PRATHER, JJ.
HAWKINS, Justice, for the Court:
The parties on this appeal from the Chancery Court of Lauderdale County are Linda Kay Moseley Crowson and Richard Henry Moseley.
In the original divorce proceedings between the parties, Moseley was granted custody. Involved before us now is whether the chancellor erred in failing to give the mother a more extended visitation right with their children.
Although other assignments of error have been made, we address this issue only, and have concluded the chancellor erred in not granting more extensive visitation to the mother.

FACTS
On June 5, 1980, the Chancery Court of Lauderdale County granted Moseley a divorce from his wife Linda on the ground of adultery. Three children were born of their marriage, namely: Richard Lee, born *1151 February 22, 1971; Mary Suzanne, born February 26, 1973; and John Kelly, born May 22, 1976. Moseley was granted custody. The chancellor rendered a strong opinion castigating Linda.
On August 20, 1980, Linda married Thomas D. Crowson, M.D., the correspondent in her divorce from Moseley.
On January 21, 1983, Mrs. Crowson filed in the Chancery Court of Lauderdale County a "Motion to Enforce Judgment, Modification, Change in Custody and Alternative Relief," and after discovery and preliminary skirmishes the matter came on for hearing before the chancellor (not the same one who decided the divorce action) on March 21, 1983. After a four day trial, the chancellor rendered his opinion on March 24, 1983. In an exceptionally well reasoned and thoughtful opinion, the chancellor stated (Vol. VI, pp. 903-904):
These children do not want to be a problem area for these parents. Mr. Moseley is the custodial parent and these children must have the stability of a home base. Mr. Moseley has provided a home base and the accompanying parental love. However, these children need to know and appreciate and share the love of their mother.
The plaintiff has rehabilitated herself so she should have additional visitation. The Court finds that these children should visit with their mother for extended periods of time and such visitation should be set by the Court.
The Court has encouraged the attorneys for these litigants to settle this matter on several occasions. The reasons stated to those attorneys at the time settlement was encouraged was so that these children would know that their parents had mutually taken an action for their benefit and so that visitation could have the flexibility that only a negotiated agreement could produce.
The settlement was not forthcoming and the Court does respond with the following visitation schedule, which will commence April 1, 1983: ...
The chancellor then gave Mrs. Moseley weekend visitation once a month, beginning at 6:00 p.m. Friday and terminating 9:30 a.m. the following Sunday, with her obligated to take the children to church and leave them there. Also, at Moseley's selection, she could have the children one additional period a month from 6:00 p.m. on Friday until 7:30 p.m. the next day. She was allowed day time visitation on Mother's Day from 9:00 a.m. till 6:00 p.m., three days during Spring vacation, Thanksgiving Day or the day following, Christmas Eve and three other days during the Christmas holidays, at Moseley's selection. During summer vacations Mrs. Crowson was given the children six days, from 9:00 a.m. Monday until 7:00 p.m. the following Saturday.
Other matters were considered and other relief granted, including an allowance to Moseley of $1,000 attorney fees.
Mrs. Crowson has appealed.

LAW
Several assignments of error have been made. We consider only one, whether Mrs. Crowson should have more extended visitation with her children.
We note that when the divorce was granted the ages of the children were nine, seven and four. When the chancellor rendered his opinion, they were twelve, ten and eight. When this case was heard by this Court on oral argument on August 7, 1985, they were fourteen, twelve and nine years of age, respectively. The presiding justice at the conclusion of oral argument, and following the wisdom of the chancellor, advised the parties to attempt an agreement on visitation. This Court met with no more success than the chancellor.
In this case we have a mother who, through her own misconduct, lost custody of her children. Subsequent to the divorce, she demonstrated her continuing love for her children, and there is nothing in this record to suggest it would be harmful or unwise to extend her visitation privileges.
*1152 Indeed, the reverse of the question appears. Will the children be more harmed if a more extended visitation is not granted?
We are not concerned in this case with a change in custody, custody has been granted to, and remains with the father. Basic custody considerations do apply, however.
In Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), Justice Prather, speaking for this court, enumerated factors for the chancellor to consider in a custody action, in determining what is in the child's best interest. See also: Pellegrin v. Pellegrin, 478 So.2d 306 (Miss. 1985). Then, in Carr v. Carr, 480 So.2d 1120 (1985), Justice Prather, again speaking for this Court, gave a factor never to be considered: marital fault.
Here lies the problem. In a bitter divorce with each spouse represented by a capable, aggressive attorney devoted solely to the wishes of his client, how can the child, not a party to the case, but the one most fundamentally affected, be protected? So often, the prime weapon used by one spouse to inflict revenge and pain on the other is to deprive him or her of the companionship of the child. The attorney has been employed to satisfy his client, not the child. It is too much to expect of human nature that a wronged, abused or humiliated spouse will also somehow be able to recognize with clarity the emotional needs of the child. The attorneys can hardly be unaffected, objective assistants to the court in reaching its decision.
The job finally falls on the shoulders of the unprotected and unassisted chancellor. He must somehow separate the issues of the divorce proceedings from that one polestar issue in a custody determination, the child's best interest. This is far easier said than done. Yet, the chancellor must somehow conclude the divorce battle, and separate that from custody determination. He must say, the war is over, and now I have the armistice process of determining what is best for this child.
The present general rule prevailing in jurisdictions throughout this country is that a custody determination is not to punish an offending spouse. The wrongful conduct of a spouse is not a proper consideration unless it bears upon fitness to have the control and custody of the child. And, even if it does have some bearing upon fitness, it should not be carried to any further degree than is necessary for the child's own interest.
In Ashwell v. Ashwell, 135 Ca. App.2d 211, 286 P.2d 983, 987, (1955) the California court of appeals stated:
It is proper to bear in mind, as these things are being considered, that in determining where custody of children shall lie the courts are not engaged in a disciplinary action to punish parents for their shortcomings as individuals nor to reward the unoffending parent for any wrong suffered by the sins of the other.
In Houde v. Beckmeyer, 116 N.H. 719, 366 A.2d 504, 506 (1976), the New Hampshire Supreme Court stated: "The award of custody is not a device to reward or punish parents, ..."
In Whitfield v. Whitfield, 295 So.2d 501, 502 (La. App. 1974), the Louisiana Court of Appeals stated: "The purpose of a custody determination is not to punish a parent for any past misconduct, it is rather to serve the best interest of the children of the marriage."
In In Re Custody of Temos, 304 Pa.Super. 82, 450 A.2d 111, 125 (1982), that Court stated:
In any event, a custody decree is not meant to punish a parent, or anyone else; its only purpose is to help the children... . This purpose must never be forgotten, either by the parties in their presentation of the evidence, ... or by the court.
And again on p. 117 of that same opinion appears the eloquent admonition: "No concern is more precious than our children, not simply because we care so much about their present happiness but because the *1153 future depends upon their wholesome growth."
In this case we must conclude that the chancellor, while rendering an admirable opinion, was manifestly wrong in curtailing visitation to such limited and short periods.
We therefore remand the case for his further consideration. While not intending in any way to impose our judgment upon him as to the precise visitation allowed Mrs. Crowson, we do hold that the children at the least are entitled to the company of their mother two full week-ends a month during the school year, with the visitation to terminate late Sunday afternoon as opposed to Sunday morning, and a five-week period during summer vacation.
In Lathan v. Latham, 223 Miss. 263, 78 So.2d 147 (1955), the appellant mother complained that the father could give the children so many more material things than she could afford, that being with him could alienate the children from her. Chief Justice Gillespie, speaking for the Court, stated, p. 153:
We have given searching consideration to every contention made by appellant, and we are not at all unmindful of the plight of the mother. She nurtured these children to the bloom of young manhood and young womanhood, and now is deprived of their companionship. But no court has the power, and no judge the wisdom, to make a decree in a case such as this that would be sufficient to erase the wages of human error.
Of course, the chancellor as an officer of the state and society can never make repairs for the harm done the children from a broken marriage; at best he can only ameliorate. Yet, it is his job to do the best he can, and it is in special cases such as this that a wise, patient and caring chancellor justifies the separate existence of that court we all know as the court of equity.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.