602 So.2d 855 (1992)
Mary H. THOMPSON, Individually, and as Mother of Traci Lee Wilcox, a Minor, and Traci Lee Wilcox, a Minor
v.
MISSISSIPPI FARM BUREAU MUTUAL INSURANCE COMPANY.
No. 90-CA-1012.
Supreme Court of Mississippi.
June 24, 1992.
*856 Gary L. Geeslin, Lipscomb Geeslin & McClanahan, Columbus, John J. Spiegel, Miami, Fla., for appellants.
Richard H. Spann, Mitchell McNutt Threadgill Smith & Sams, Columbus, for appellee.
EN BANC.
ROY NOBLE LEE, Chief Justice, for the Court:
Mississippi Farm Bureau Mutual Insurance Company filed suit in the Circuit Court of Monroe County, Mississippi, against its insured, Mary H. Thompson and her daughter, Traci Lee Wilcox, seeking an adjudication whether coverage was afforded under the terms of a liability insurance policy issued to Mrs. Thompson providing no liability coverage for injuries sustained by a family member. The lower court entered an order for summary judgment, holding that no coverage was applicable to the insured under the facts of this case.

FACTS
Mary House Thompson and Gary Wilcox were married in Homestead, Florida, on December 18, 1970. To this union was born one daughter, Traci Lee Wilcox, on May 25, 1972. The mother and father were later divorced in 1973, with custody of Traci granted to the mother. Traci lived with her mother in Dade County, Florida, until 1980 when they moved to Monroe County, Mississippi. While in Monroe County, Traci attended Hamilton Elementary School and Faith Christian Academy. After a few years, Traci decided that she did not like Mississippi schools and wanted to live with her father in Florida so she could attend those schools. Her father is employed as a law enforcement officer for Dade County.
In preparation for Traci's enrollment in the Florida school system, Traci had to undergo a physical examination. Consequently, she was taken to Dr. John Neil Turnage in Aberdeen, Mississippi, on August 19, 1985. He examined Traci and found her to be in good physical condition and able to attend school. After making arrangements for the transfer of Traci's school records to Florida, Traci and her mother loaded all of Traci's clothing, her television, stereo, pet parakeet, and other belongings into the mother's automobile and set out for her father's house in Homestead, Florida.
Upon arriving in the Homestead area, Mrs. Thompson was proceeding to her brother's home in order for Traci to call her father, Gary Wilcox, before proceeding to his house. While Traci's mother was attempting to make an improper left turn onto Krome Avenue, her vehicle was struck in the passenger door by an oncoming pickup truck. Mrs. Thompson stated that she did not see the oncoming truck because there was a tractor-trailer about 300 yards *857 ahead of her making a left turn, which blocked her view. Traci, thirteen years of age at the time, suffered cracked ribs, a fractured pelvis, and an injury to her thumb as a result of the collision.
According to the record, Traci would often spend time each summer in Florida with her father, even though her mother had legal custody. There also exists a discrepancy in Mrs. Thompson's statements concerning the trip. In a recorded statement made to an adjuster for Farm Bureau, she stated that Traci was just going down to visit, while in a later affidavit she stated that Traci was going to Florida to live. Also, the declaratory judgment suit was filed in Mississippi before suit was filed in Florida by Traci Lee Wilcox, through her father asserting claims arising from the automobile accident.
The accident occurred before Traci reached her father's home, but while en route to it.

LAW

I. Did the lower court err in holding that Traci Lee Wilcox was a member of her mother's household and was excluded from coverage under her mother's automobile liability insurance policy?
The case at bar presents a question of first impression on the narrow issue concerning when, and if, a minor ceases to be included in a divorced parent's household for the purposes of exclusion clauses in insurance policies.
The policy language here states:
This policy does not apply under Coverage A, to bodily injury to or death of the insured or any member of the family of the insured residing at the same household.
For preliminary guidance, we look to the decisions addressing the issue of a minor's domicile when his/her parents are divorced. In Latham v. Latham, 223 Miss. 263, 78 So.2d 147 (1955), the Court held that the domicile of a child of divorced parents is that of the parent to whom its custody has been awarded. Also, an infant can not of its own volition acquire a domicile. Id. 78 So.2d at 150. In Allen v. Allen, 243 Miss. 23, 136 So.2d 627, 630 (1962), the Court stated that "ordinarily the domicile or legal residence of a minor child is the same as that of the father, but where the parents separate, the child usually takes the domicile of the parent with whom it lives in fact."
We recognize that this Court and other jurisdictions have held that intent is a basis of domicile. Stubbs v. Stubbs, 211 So.2d 821, 824 (Miss. 1968). Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is that of their parents. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29, 46 (1989). In the present case, the intent to change domicile had been formed but the move had not come into fruition at the time of the collision.
Family exclusion clauses in insurance policies have been previously addressed by this Court. In Perry v. Southern Farm Bureau Casualty Insurance Company, 251 Miss. 544, 170 So.2d 628 (1965), the Court, in upholding the validity of a family household exclusion clause, stated:
There is no valid reason why insurance companies should not have the right, by contract, to avoid coverage for those in the family circle, who, on account of their close intimacy, may be expected to be riding at frequent intervals in the insured car.
The intent of the contract and the attendant circumstances must be considered in arriving at reasonable conclusions in such cases.
Id. 170 So.2d at 630.
In Perry, Mrs. Edge, the mother-in-law of the insured, Perry, was denied coverage under Perry's policy because she (1) lived with the Perrys and (2) was a member of the Perry household also.
The question in Fleming v. Travelers Insurance Company, 206 Miss. 284, 39 So.2d 885 (1949), was whether the husband, while separated but not divorced from his wife for five or six years and living out of state, is within the same household as his *858 legal wife. The Court held that the husband was not a member of the household stating:
when dealing with a contract of insurance, the Court must inquire into what the parties thereto meant. Practical considerations must be given play, interpreted in the light of the purpose of the policy provision.
Id. 39 So.2d at 887.
Mrs. Thompson relies on the case of Bednarz v. Continental Insurance Company, 453 F.2d 372 (5th Cir.1972), which held that an adult daughter who was moving from Slaton, Texas, to Pueblo, Colorado, in her own automobile and with all her belongings at the time of the accident was not a resident of her father's household. The Fifth Circuit Court of Appeals found that the daughter had left Slaton with the intention of making Pueblo her permanent residence; that she had accepted a full-time teaching position; and that she had no intention of returning to her father's home to live. Therefore, she was not part of the father's household. Id. at 373. We are of the opinion that the facts of the case at bar distinguish it from the Bednarz case.
The Louisiana Court held in Chapman v. Allstate Insurance Company, 306 So.2d 414, 416 (La. Ct. App. 1975), that the mere intention to be a resident of her father's household was not sufficient to make the child an actual member of that household. In Chapman, Andrew Chapman brought an action against Allstate claiming uninsured motorist coverage, under his policy, for the death of his son, Carl Chapman. Mr. Chapman and his wife had been divorced for seven years, with Mrs. Chapman having full custody of Carl. Carl and his mother lived in Louisiana with Mr. Chapman living in Florida. Carl had gone to live with his father permanently on two previous occasions. However, since his father's job working offshore required him to be away often, Carl moved back home with his mother. Meanwhile Andrew Chapman moved to Louisiana, when Carl again expressed a desire to live with his father. Carl's mother advised that he wait until the end of the school year, which he did. The fatal accident occurred before Carl had actually moved to his father's home.
The policy in question would only cover Carl if he was a resident in his father's household. The court held that Carl could not be considered a legal resident of his father's household since there was a change of status by law. Once the Florida court awarded legal custody of the un-emancipated minor Carl to his mother, he became a legal resident of his mother's household. Id. at 416. The Chapman court also noted that none of Carl's belongings had been transferred to his father's household and that the intention to become a resident of his father's household is not sufficient to make him an actual member of that household.
In our opinion, the following undisputed facts require that the judgment of the lower court be affirmed.
1. Traci was a minor, thirteen years of age.
2. Traci had lived with her mother in Monroe County, Mississippi, since 1980.
3. Traci had been under the legal custody, management and control of her mother since her mother's divorce in 1973, with no application to a court having been filed to change such legal custody and control.
4. Traci was with her mother, in her mother's automobile, when the accident occurred.
5. Traci and her mother had just come off the road from travelling to Florida when the accident occurred, not having reached Traci's father's residence.
6. Traci had not seen or been in contact with her father upon arrival in Florida and was not under his management and control at the time of the accident.
7. Traci's belongings were in her mother's automobile, not having been transferred to her father's residence.
The judgment of the lower court is affirmed.
AFFIRMED.
*859 HAWKINS, P.J., PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE, J.
McRAE, J., dissents with separate written opinion.
DAN M. LEE, Presiding Justice, dissenting:
Mississippi Farm Bureau Mutual Insurance Company raised a broad question in its complaint: "[W]hether coverage exists in connection with the claims of Traci Lee Wilcox." When presenting its case, however, Farm Bureau convinced the trial court that only a very narrow question be decided: "Whether Traci Lee Wilcox was a member of Thompson's household for purposes of the family-member exclusion clause in Thompson's liability policy." Viewing the issue as a simple matter of definition, the trial court decided the case in Farm Bureau's favor as a matter of law.
If the majority's decision is facially correct, I have serious doubts about whether the lower court should have entertained this action in the first place. The Comment to MRCP Rule 57 provides that, "[t]he jurisdiction of the courts is not expanded and requests for declaratory judgments may be heard only in cases that otherwise are within their jurisdiction." The skimpy record from which we are working indicates that this declaratory action is pendent to a pending Florida action involving the same parties. It is not clear which action was filed first. The record in this action contains a May 28, 1988, deposition of Thompson, taken by Farm Bureau in the Florida action. The instant suit was filed March 4, 1988. Aside from the record's vague indication that the Florida proceedings involve, "like or similar claims between all of the parties to this action," we know practically nothing about the Florida case. Without more, we can only speculate about the jurisdictional propriety of a declaratory judgment claim ostensibly raised to garner a favorable ruling from the Mississippi courts on an issue pertinent to a pending out-of-state proceeding.
Assuming jurisdiction existed, the trial court would nevertheless have best served the interests of justice by refusing to hear the case. MRCP Rule 57(a) states: "The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceeding." This is such a case. Unlike Mississippi, motor vehicle insurance in Florida is governed by no-fault statutes. West's F.S.A. §§ 627.730-627.7405 (1977 and Supp. 1992). A non-resident owner of an automobile whose personal injury protection is in compliance with Florida's no-fault law is exempt from tort immunity to the same extent as a state resident in compliance. Spence v. Hughes, 500 So.2d 538 (Fla. 1987). The policy issued to Ms. Thompson states:
When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility of any state or province, such insurance as is afforded by this policy shall comply with the provisions of such law to the extent of the coverage and limits of liability so required, but not in excess of the policy limits of liability. (Emphasis added).
Being unable to ascertain from the record whether Wilcox's suit in Florida was brought under the no-fault statute and finding that the Florida court is in a better position to make a determination of whether Thompson's insurance coverage was in compliance with Florida law, we cannot say with any certainty that a determination under Mississippi law that Traci Wilcox was a member of her mother's household would necessarily terminate any controversy or uncertainty in those proceedings. In any event, even if the instant declaratory judgment precluded Wilcox from recovering under Thompson's liability policy in the Florida action, Wilcox possibly could still pursue a claim under Thompson's uninsured motorist coverage since she was an occupant of Thompson's vehicle at the time of the accident. See, Allstate Ins. Co. v. Randall, 753 F.2d 441 (5th Cir.1985) (injured passenger may recover under driver's *860 uninsured motorist policy where household exclusion prevents recovery under liability policy); see also, Cossitt v. Nationwide Mut. Ins. Co., 551 So.2d 879 (Miss. 1989); Wickline v. United States Fidelity & Guar. Co., 530 So.2d 708 (Miss. 1988); United States Fidelity & Guar. Co. v. Pearthree, 389 So.2d 109 (Miss. 1980).
It is true that the language of Rule 57(a) is permissive. Taken literally, the rule appears to imply that a court may, in its discretion, render a declaratory judgment even where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding. To do so, however, amounts to a tremendous waste of judicial resources. The waste is particularly pronounced in a case such as this where the declaratory judgment resolves absolutely nothing in the pending Florida case. This Court is not in a position to second guess the trial court's discretionary decisions, but given the circumstances of the instant case, I would not have rendered a declaratory judgment had I stood in the trial judge's shoes.
McRAE, J., joins this opinion.
McRAE, Justice, dissenting:
Mississippi Farm Bureau Mutual Insurance Company raised a broad question in its complaint: "[W]hether coverage exists in connection with the claims of Traci Lee Wilcox." When presenting its case, however, Farm Bureau convinced the trial court that only a very narrow question need be decided: Whether Traci Wilcox was a member of Thompson's household for purposes of the family-member exclusion clause in Thompson's liability policy. Thus viewing the issue as a simple matter of definition, the trial court decided the case in Farm Bureau's favor as a matter of law. Falling for the same bait, a majority of this Court has chosen to affirm.
To decide this question properly, however, we must look not only to the literal terms of the insurance policy and the governing statutes, but also to the history behind endorsement clauses of this type as well as to the public policy considerations and legislative intent upon which the applicable statutes are based. In my view, the majority has arrived at the wrong decision by failing to consider the issue in its full historical context and by ignoring the underlying principles of law and public policy. To simply apply the literal terms of the endorsement clause to the scant facts presented in the record now before us merely begs the question. Accordingly, I dissent.
Even if the majority's decision were facially correct, I would still have serious doubts about whether the lower court should have entertained this action in the first place. The Comment to MRCP Rule 57 provides that "[t]he jurisdiction of the courts is not expanded and requests for declaratory judgments may be heard only in cases that otherwise are within their jurisdiction." The skimpy record from which we are working indicates that this declaratory action is pendant to a pending Florida action involving the same parties. It is not clear which action was filed first. The record in this action contains a May 28, 1988, deposition of Thompson, taken by Farm Bureau in the Florida action. The instant suit was filed on March 4, 1988. Aside from the record's vague indication that the Florida proceedings involve "like or similar claims between all of the parties to this action," we know practically nothing about the Florida case. Without more, we can only speculate about the jurisdictional propriety of a declaratory judgment claim ostensibly raised to garner a favorable ruling from the Mississippi Courts on an issue pertinent to a pending out-of-state proceeding.
Assuming jurisdiction existed, the trial court would nevertheless have best served the interests of justice by refusing to hear the case. MRCP Rule 57(a) states: "The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainly or controversy giving rise to the proceeding." This is such a case. Unlike Mississippi, motor vehicle insurance in Florida is governed by no-fault statutes. West's F.S.A. §§ 627.730-627.7405 (1977 and Supp. 1992). A non-resident owner of *861 an automobile whose personal injury protection is in compliance with Florida's no-fault law is exempt from tort immunity to the same extent as a state resident in compliance. Spence v. Hughes, 500 So.2d 538 (Fla. 1987). The policy issued to Ms. Thompson states:
When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility of any state or province, such insurance as is afforded by this policy shall comply with the provisions of such law to the extent of the coverage and limits of liability so required, but not in excess of the policy limits of liability. (Emphasis added).
Not being able to ascertain from the record whether Wilcox's suit in Florida was brought under the no-fault statute and finding that the Florida court is in a better position to make a determination of whether Thompson's insurance coverage was in compliance with that required of that state's drivers, we cannot say with any certainty that a determination under Mississippi law that Traci Wilcox was a member of her mother's household would necessarily terminate any controversy or uncertainty in those proceedings. In any event, even if the instant declaratory judgment precluded Wilcox from recovering under Thompson's liability policy in the Florida action, Wilcox could still pursue a claim under Thompson's uninsured motorist coverage since she was an occupant of Thompson's vehicle at the time of the accident. See Allstate Ins. Co. v. Randall, 753 F.2d 441 (5th Cir.1985) (injured passenger may recover under driver's uninsured motorist policy where household exclusion prevents recovery under liability policy). Concerning coverage for occupants under a driver's uninsured motorist coverage, see Cossitt v. Nationwide Mut. Ins. Co., 551 So.2d 879 (Miss. 1989); Wickline v. United States Fidelity & Guar. Co., 530 So.2d 708 (Miss. 1988); United States Fidelity & Guar. Co. v. Pearthree, 389 So.2d 109 (Miss. 1980).
It is true that the language of Rule 57(a) is permissive. Taken literally, the rule appears to imply that a court may, in its discretion, render a declaratory judgment even where the judgment would not terminate the uncertainty or controversy giving rise to the proceeding. To do so, however, amounts to a tremendous waste of judicial resources. The waste is particularly pronounced in a case like this one where the declaratory judgment resolves absolutely nothing in the pending Florida case. This court is not in a position to second guess the trial court's discretionary decisions, but given the circumstances of the instant case, I would not have rendered a declaratory judgment had I stood in the trial judge's shoes.
Questions of jurisdiction and judicial economy aside, I believe the issue presented has been wrongly decided. The lower court and the majority of this Court have apparently donned blinders which prevent them from seeing all the factors which bear on this matter. The issue, as Farm Bureau frames it before this Court, is deceptively simple: Does an endorsement denying liability coverage for injuries suffered by a member of the insured's household apply to injuries sustained by the daughter of Thompson, Farm Bureau's insured? The trial court and the majority find that Thompson's daughter was a member of Thompson's household and, on that basis alone, summarily conclude that the endorsement allows the insurer to avoid coverage.
An analysis of the original justification for endorsement clauses of this type demonstrates the weakness of the majority's position. The majority, along with Farm Bureau, relies on Perry v. Southern Farm Bureau Casualty Insurance Co., 251 Miss. 544, 170 So.2d 628 (1965), a case where this Court observed that "[t]here is no valid reason why insurance companies should not have the right, by contract, to avoid coverage for those in the family circle." The majority neglects to note that when Perry was decided, this state still abided by the doctrine of inter-family or interspousal immunity. That doctrine has now been abrogated. See Burns v. Burns, 518 So.2d 1205, 1211 (Miss. 1988); see also Cain v. McKinnon, 552 So.2d 91, 93 (Miss. 1989).
*862 Prior to Burns, the immunity afforded to family members of the insured was absolute and without exception as illustrated by the following examples set out in the Burns opinion:

Matthews v. State Farm Mutual Auto Ins. Co., 471 So.2d 1223 (Miss. 1985) (cause of action in which one spouse sues the other for personal injury, incurred prior to marriage, is extinguished by the marriage and is not thereafter revived upon the divorce of the parties); State Farm Mutual Automobile Ins. Co. v. Nester, 459 So.2d 787 (Miss. 1984); Aitken v. State Farm Mutual Automobile Ins. Co., 404 So.2d 1040 (Miss. 1981); McNeal v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss. 1971) (one spouse has no right of action against the other to recover damages for personal injuries caused by the other); Ensminger v. Campbell, 242 Miss. 519, 134 So.2d 728 (1961) (wife had no cause of action against husband at time of accident for injuries suffered while riding as passenger in his automobile, and no cause of action for such injuries accrued to her as a result of thereafter obtaining divorce, either against former husband or against administrator of his estate after death); Ensminger v. Ensminger, 222 Miss. 799, 77 So.2d 308 (1955) (wife's suit for injuries caused by husband's negligent operation of automobile, dismissed as no liability exists between husband and wife for personal tort); McLaurin v. McLaurin Furniture Co., 166 Miss. 180, 146 So. 877 (1937) (wife denied recovery against her husband because of the marital relationship between them although his negligence proximately caused her injury); Deposit Guaranty Bank and Trust Co. v. Nelson, 212 Miss. 335, 54 So.2d 476 (1951) (daughter whose mother was allegedly shot and killed by the daughter's stepfather could maintain a death action against the stepfather, though, if the mother had not died, she would not have been able to have maintained an action against the stepfather for assault); Scales v. Scales, 168 Miss. 439, 151 So. 551 (1934) (right of action against husband arising out of automobile accident, existing in wife before marriage, held extinguished by marriage); H.L. Austin v. Maryland Casualty Co., 105 So. 640 (Miss. 1925) (the law gives a wife no cause of action against her husband for injury done to her because under the law no legal wrong has been done to her by her husband).
Burns, 518 So.2d at 1207-08. So long as inter-family immunity survived, there was a logical reason for permitting endorsements which excluded liability coverage for injuries sustained by family members: There was no liability to cover due to the complete immunity afforded by law. But when this Court laid the doctrine of inter-family immunity to rest, the rationale for family-member exclusion endorsements in liability insurance policies likewise expired. One may argue, of course, that such clauses are aimed at preventing insurance fraud and collusion. This is indeed a slim justification for family-member exclusion clauses, for we have state laws which are fully adequate to discourage or punish acts of fraud and collusion. Further, it is clear that Wilcox, as an injured passenger, would be entitled to recover under Thompson's uninsured motorist coverage if Thompson is deemed to have no liability coverage. See Randall, 753 F.2d at 442-44. There is no logical basis for a rule which, for fear of possible fraud, prevents a claimant from collecting under the liability provisions of a policy while permitting a recovery for the same injury under the uninsured motorist provisions of the same policy. The truth of the matter is that endorsement clauses of the type Farm Bureau seeks to enforce have outlived their raison d'etre. It is true that this Court has in the past recognized and enforced endorsement clauses which deny liability coverage for injuries suffered by those who live in the same household as the insured. But as we stated in Burns:
The common law is the perfection of reason, and, when a rule of the common law ceases to be reasonable and just, it is no longer the common law. Those principles of the common law which are unsuited to our conditions, or repugnant to the spirit of our institutions, are not in force *863 in this state. Only such rules of the common law as are adapted to our institutions and circumstances and not repealed by the Legislature or varied by usage are in force.
Burns, 518 So.2d at 1208 (quoting Planters' Oil v. Yazoo & M.V.R. Co, 153 Miss. 712, 717, 121 So. 138, 140 (1929)). In keeping with this principle, we should adjust our approach to liability insurance policies to reflect the changing landscape of tort law. The circumstances which once justified family-member exclusions are now altered by the abrogation of inter-family immunity. Consequently, our former view has become "unsuited to our conditions."
Further, the enforcement of Farm Bureau's endorsement clause is "repugnant to the spirit of our institutions" and runs afoul of the public policies and legislative intent which underlie Mississippi's Safety Responsibility Act. Section 63-15-43(3) of the Safety Responsibility Act provides that an automobile "operator's policy of liability insurance shall pay on behalf of the insured named therein all sums which the insured shall become legally obligated to pay as damages." (Emphasis added). When the doctrine of inter-family immunity was in force, a family member could not "become legally obligated to pay" for injuries negligently inflicted upon another family member. Endorsement clauses excluding liability coverage for injuries to family members were thus not inconsistent with the wording of the statute. Since we abrogated inter-family immunity, however, such clauses are no longer insulated from the mandatory language of § 63-15-43(3). As a matter of policy, the legislature has announced that liability insurers "shall pay ... all sums" for which the insured may become legally liable. Had the legislature intended to exclude from "all sums" those damages owed to family members, it could have created an exception. It did not, so we must presume that the legislature meant exactly what it said. Farm Bureau has attempted to create an exception of its own by including the contested endorsement clause in its policy. However, "the public policy dictates of the [Mississippi] Safety Responsibility Act ... override any contrary insurance policy language." Allstate Ins. Co. v. Randall, 753 F.2d 441 (5th Cir.1985). The clear and unambiguous terms of § 63-15-43(3) thus render Farm Bureau's endorsement clause unenforceable.
The endorsement clause also conflicts with the policy set out in §§ 63-15-3(j) and 63-15-11 of the Safety Responsibility Act. Section 63-15-11 requires where a motorist is involved in an accident involving injuries potentially attributable to the motorist's negligence, the motorist's license shall be suspended unless he provides a security deposit in an amount determined by the Department of Public Safety. The motorist must also provide proof of "financial responsibility," a term defined by § 63-15-3(j) as the ability to pay damages in the amount of $10,000 for the injury or death of one person, $20,000 for the injury or death of two persons, and $5,000 for property damage. These requirements are waived only if the motorist is covered by liability insurance.
One effect of the liability insurance exception to § 65-15-11 is to encourage motorists to purchase liability insurance. In the instant case, Ms. Thompson did purchased a liability policy and paid a premium for the protection she thought she was getting. The majority is now telling her that the protection for which she paid was only partial. Despite paying a premium for a policy in which the insurer promises on page one to "pay ... all sums which the insured shall become legally obligated to pay as damages," Ms. Thompson still finds herself potentially subject to the license suspension and security deposit requirements of § 63-15-11. If her accident had happened in this state, she would be treated, for purposes of § 63-15-11, as if she had no insurance at all. This result is contrary to our caselaw. In GEICO v. Brown, 446 So.2d 1002, 1996 (Miss. 1984), we stated that "[a]ny language [in an insurance policy] attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid." See also Randall, 753 F.2d at 444.
*864 Farm Bureau may argue that Thompson's premium did not pay for liability resulting from injuries suffered by household members since the endorsement clause seems to exclude such injuries from coverage. The family exclusion clause, however, is inconsistent with the insurer's broad promise on page one of the policy to "pay ... all sums." The resulting ambiguity must be resolved in favor of the insured. Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss. 1984); see also Employers Ins. of Wausau v. Trotter Towing Corp., 834 F.2d 1206 (5th Cir.1988). Given the internal inconsistency of Farm Bureau's policy, I would interpret the language of the policy against the insurer and find that Thompson was insured against "all sums" she might become legally obligated to pay, including damages for injuries to members of her household. An insurer should not be permitted to say one thing on the first page of a policy and then renege at the end.
In light of this interpretation, it is clear that Thompson is being deprived of a benefit for which she has paid a premium. She purchased a liability policy, yet she now finds herself unprotected when sued for injuries sustained by another. This unfortunate outcome violates both the spirit and intent of § 63-15-11. Even worse, she must defend herself against a declaratory suit by an insurer who pledged in its policy to "defend any suit" against the insured. The irony of Thompson's predicament becomes apparent when one notes that under her adhesion contract with Farm Bureau, she could not have filed a declaratory action like the one Farm Bureau has filed until after her liability had been reduced to judgment and all appeals exhausted. For that matter, neither could Wilcox, the plaintiff in the Florida negligence action, seek a declaratory judgment construing the policy due to our prohibition against third party actions against insurers. See Hunt v. Preferred Risk Mut. Ins. Co., 568 So.2d 253 (Miss. 1990). To allow an insurer to have the terms of a policy interpreted prior to judgment while forcing the insured to wait until after judgment is, to say the least, patently unfair. In my view, such a disparity in access to our courts constitutes a gross violation of an insured's right to due process under both the Mississippi and United States constitutions.
A survey of the caselaw from other jurisdictions reveals that a multitude of states have found family-exclusion clauses totally or partially void on grounds that they are contrary to public policy and conflict with statutes similar to our own Safety Responsibility Act. See Halpin v. American Family Mut. Ins. Co., 823 S.W.2d 479 (Mo. 1992); Cimarron Ins. Co. v. Croyle, 479 N.W.2d 881 (S.D. 1992); Collins v. Farmers Ins. Co., 312 Or. 337, 822 P.2d 1146 (1990); Beacon Ins. Co. v. State Farm Mut. Ins. Co., 795 S.W.2d 62 (Ky. 1990); Tissell v. Liberty Mut. Ins. Co., 115 Wash.2d 107, 795 P.2d 126 (1990); Walther v. Allstate Ins. Co., 83 Md. App. 405, 575 A.2d 339 (1990); State Farm Mut. Auto. Ins. Co. v. Mastbaum, 748 P.2d 1042 (Utah 1987). It is time for Mississippi to join these ranks. This Court crawled into the twentieth century when it abrogated the doctrine of inter-family immunity in Burns. However, today's decision plainly shows that we have not yet stood up or begun to walk. I would rise to the occasion and announce that endorsement clauses which exclude liability coverage for injuries sustained by family members are against public policy and contrary to the laws of the State of Mississippi.