343 So.2d 762 (1977)
Geneva Irene HARRIS
v.
William Charles HARRIS, Jr.
No. 49531.
Supreme Court of Mississippi.
March 9, 1977.
Smith, Downs, Coleman & Ross, Orma R. Smith, Jr., Wendell H. Trapp, Jr., Corinth, for appellant.
Joe Ray Langston, Thomas H. Comer, Jr., Ed W. Jenkins, Booneville, for appellee.
Before INZER, SMITH and WALKER,[1] JJ.
GILLESPIE, Chief Justice, for the Court:
This case involves the question whether the Chancery Court may lawfully deprive a mother of the custody of her child because of her adherence to a particular religious belief. From an adverse decree of the Chancery Court of Tishomingo County in favor of William Charles Harris, Jr., his former wife, Mrs. Geneva Irene Harris appeals to this Court.
Mrs. Harris was granted an absolute divorce from William Charles Harris, Jr., by a decree of the Chancery Court of Tishomingo County on July 10, 1973. Mrs. Harris was granted the primary custody of the minor child of the parties, William Charles Harris, III, now seven and one-half years old. The divorce decree prohibited Mrs. Harris from maintaining the presence of the child in any place where poisonous snakes were handled. On April 22, 1975, Mrs. Harris filed proceedings charging that *763 Mr. Harris was illegally holding custody of the child contrary to the provisions of the original divorce decree. Mr. Harris filed his answer and petition to modify the original decree.
After a full hearing the court entered a decree modifying the divorce decree so as to grant primary custody of the child to his father and providing for Mrs. Harris to have limited visitation rights at the home of her former husband. The chancellor found, among other things, in his opinion that there had been a material change in circumstances. He also found that the mother is a fit and proper person in every respect. It is manifest to this Court, after closely examining the record, that there had been no material change in circumstances and that the reason for the modification of the former decree and depriving the mother of the custody of this child was because Mrs. Harris was a practicing member of the Free Will Holiness Pentecostal Church in Red Bay, Alabama. The chancellor found in his opinion as follows:
Though the mother is a fit and proper person in every respect, the surroundings in said home and the fact that she and her mother are both members of a religious sect which, in the opinion of this Court, adhere to doctrines detrimental to the growth, welfare and intellectual development of a five year old child; that when this child reaches an age when he can decide for himself, he may select which religion he wishes to embrace; but until then, it is the opinion of the Court that the best interest of said child, being paramount consideration of this Court, will best be served by awarding his primary custody to his father, William Charles Harris, Jr.
The mother of said child, Geneva Irene Harris, stated upon oath from the witness stand that she is a member of the Free Will Holiness Pentecostal Church. It is without dispute that said child, William Charles Harris, III, has been permitted, against the former decree of this court, to attend religious services where reptiles were handled in close proximity to said child, where there was some shouting, speaking in the unknown tongue, and generally a situation which could do nothing but disturb and scare a small child.
There is no proof that the child was ever taken to a religious service where snakes were handled except on one occasion when Mr. Harris himself insisted on attending and taking the child to the service at Payne's Chapel located near Scottsboro, Alabama. The record shows without dispute that Mrs. Harris did not want to take the child to that service because she thought snakes might be handled. The testimony shows that snakes have never been handled by any of the regular members at the church usually attended by Mrs. Harris. The testimony further shows without dispute that Mrs. Harris and the child have never attended a service at the church in Red Bay when snakes were handled, although snakes are kept at the service in a cage. There is no proof that this child was subjected to any danger of being bitten by a poisonous snake.
The case is reduced to this proposition: Could the chancellor lawfully change the custody of this child because the mother and child attended the Free Will Holiness Pentecostal Church? Or to state the question differently, does Mrs. Harris have the constitutional right to attend the church of her choice and bring up her child in accordance with her religious beliefs?
The Free Will Holiness Pentecostal Church is a fundamentalist sect that bases its belief concerning handling snakes on Mark 16:18, which states: "They shall take up serpents; and if they drink any deadly thing, it shall not hurt them; they shall lay hands on the sick, and they shall recover."
It is said that this sect originated in Grasshopper Valley, Tennessee, in 1909, when George W. Hensley was reading the sixteenth chapter of Mark and came upon the quoted passage. After reading this verse, Hensley is said to have captured a large rattlesnake, after which he called a meeting of his neighbors and exhorted them to express their belief in the Bible by passing the snake among themselves and no *764 one was hurt. Consequently, the word quickly spread. The founder's faith caused his death in 1955 at Lester's Shed, Florida, when he was fatally bitten by a diamond-back rattlesnake during a prayer service. It is reported that his death was almost fatal to the movement as well as to Hensley, but there are still a few churches that adhere to Hensley's belief. The church at Red Bay, Alabama, which Mrs. Geneva Harris and her mother attend, adheres to the doctrine originally taught by Hensley, but the proof shows that snakes were never handled at the services in this church by any of the regular members. One of the members of the congregation was in charge of keeping a snake in a cage and bringing it to the services in a locked cage, which was usually placed on top of the piano or on a table. The church members believe that a person anointed by God to handle a snake can do so without harm. But so far it appears that none of the members of the Red Bay Church has ever felt so anointed. Mrs. Geneva Harris stated that she had never handled a snake and would not do so.
The First Amendment to the Constitution of the United States provides in the first sentence thereof that "Congress shall make no laws respecting an establishment of religion, or prohibiting the free exercise thereof; ... ."
Article 3, section 18 of the Mississippi Constitution of 1890 provides in part as follows: "... the free enjoyment of all religious sentiments and the different modes of worship shall be held sacred."
The free and undisturbed enjoyment of religious opinion, whatever it may be, is guaranteed by the Constitution of the United States and the Constitution of Mississippi. It was no accident that the First Amendment to the Constitution, in the first sentence thereof, guaranteed religious liberty. Many of the early immigrants to this country came to escape religious persecution, and the leaders of the Republic in its early years knew that in Europe the existence of two or more religious denominations generally preceded the advent of religious liberty. And it is doubtless true today that the existence of several denominations promotes religious liberty. The Constitutions protect every variety of religious opinion.
Mrs. Harris believes in the doctrine of her church and she has a right to practice her faith as she believes it, and to indoctrinate her child in her religious beliefs so long as she has his custody. Likewise, the father has a right to teach the child concerning religious matters while the child is in his lawful custody. These rights, of course, do not include the right to expose the child to physical danger, and in this case there is no proof that Mrs. Harris' attendance at her church exposed the child to the risk of being bitten by a snake. It is significant that she, along with other members of the congregation, had never felt "anointed by the Lord" with the power to handle snakes. The doctrine of Mrs. Harris' church apparently does not require members to handle snakes, an obviously wise provision, and Mrs. Harris' testimony indicates that she not only has never been anointed with the power to handle snakes, but does not expect to be so anointed.
The chancery court had no authority to dictate to Mrs. Harris what religion she should teach her child so long as it did not involve exposing him to physical danger or to what society in general deems immoral practices.
The decree modifying the original divorce decree is reversed and the petition to modify it is dismissed and the original decree is reinstated in all of its provisions.
REVERSED AND RENDERED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] This case was assigned to Chief Justice Gillespie for whom Presiding Justice Inzer substituted at oral argument.