571 So.2d 981 (1990)
Conrad MORD
v.
Julia Ann Mord PETERS.
No. 89-CA-0833.
Supreme Court of Mississippi.
December 5, 1990.
Conrad Mord, Tylertown, for appellant.
Robert D. Jones, Jordan & Jones, Meridian, Hardy R. Stennis, Macon, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
Conrad Mord (hereinafter Mord) appeals the judgment of the Noxubee County Chancery Court. The court's judgment denied Mord the injunctive relief he requested against his former wife, Julia Mord Peters (hereinafter Peters), for interfering with his visitation rights. Finding merit to only the following assignment of error, we address it.

THE TRIAL COURT COMMITTED MANIFEST ERROR IN REFUSING TO ISSUE AN ORDER ENJOINING DEFENDANT/APPELLEE PERMANENTLY FROM INTERFERENCE WITH THE EXERCISE OF PLAINTIFF/APPELLANT'S VISITATION RIGHTS
We conclude in instances when a non-custodial parent has unsupervised visitation rights, the custodial parent has no right to interfere with the non-custodial parent's visitation with his children.

STATEMENT OF THE FACTS
On April 23, 1980, the Chancery Court of Noxubee County entered a decree granting a divorce to Mord and Peters. Finding the need to modify their visitation rights, the parties entered an Agreed Order of Modification on October 31, 1988.
This modification would only last for a few months before Mord was in court again. He filed a complaint alleging that Peters was interfering with his visitation rights as she would neither allow him to fly the children in his airplane nor permit him to provide flying lessons for the children. Mord insisted that this was an unreasonable restraint on his visitation rights and, therefore, he was entitled to a permanent injunction.
In response to this complaint, Peters filed her answer. Of particular importance, Peters asserted that "as custodial parent, and pursuant to the Agreed Order, [she] has the unfettered discretion as to whether ... the children will be permitted to fly [in their father's private airplane]." *982 In addition, she alleged that Mord, a practicing attorney, was simply harassing her with this litigation. Moreover, he "continues to capitalize on the fact that he is not required to employ counsel to file pleadings to file to intimidate [her] to incur on-going and continuous legal expenses, including attorney's fees and Court costs." Although we find that Mord's complaint is meritorious, we emphasize that attorneys should not use their position to misuse judicial proceedings.
This matter was brought before the chancellor on June 28, 1989. During the trial, the parties were the only people to present testimony.

THE HEARING

A.

Testimony related to flying
The Mords are the parents of two children, Russell and Emily. At the time of the hearing Russell was fifteen and Emily was twelve. As an adverse witness, Peters testified that during two telephone conversations with Mord, she told him that the children could not go flying with him in his airplane during his visitation period. She, however, indicated to him that the children could fly with him and even take lessons after they graduated from high school. She further indicated that as the children's mother, she has the unfettered discretion to determine whether the children could fly with their father. Believing that her authority as custodial parent supersedes that of her former husband, Peters continued to refuse to allow Mord to take the children flying.
Peters explained, on direct examination, that she did not want the children to fly because Mord only had his license for less than a year. She further explained the following:
... I know that light planes are dangerous. You can pick up the paper any time and see where accidents have occurred. I also know that if the planes go down, the passengers, usually, don't make it. And, this would be both of my children going down at the same time. * * * He also has allowed the children to fly with his father when they did stunt flying, upside down and flips ...[1]
Mord testified that he obtained his pilot license on July 29, 1988. He had between 110 and 115 total flight hours. Although he only had a license for about a year, he began taking flying lessons in 1966 when he was sixteen years old. His formal flying lessons, however, began in March 1987.[2] Mord wanted his children to be familiar with aircrafts and flying, and he wanted them to learn how to fly aircrafts. He even was willing to pay for their flying lessons.
Mord was questioned about an "accident" he had while flying. He, however, explained that he only had a "hard landing" when he was a student pilot. He explained that "[t]he Federal Aviation Administration investigated it, and that's the way they termed it, and assured [him] it was not written up anything other than a landing incident." Mord further explained that after the date of this incident, he "went for [his] check ride with a duly appointed FAA examiner who flew [with him] for in excess of two hours in all attitudes [sic] and configurations, and [the examiner] certified that [he] was a competent pilot." Id.
Mord also explained that he did not know how old the single-engine airplanes were. He indicated, however, that they were inspected annually, and one was inspected after every one hundred hours of use.
Prior to the conclusion of the hearing, the chancellor made these comments:
... At this point, I am not going to require that the children fly. I am going to make that ruling.
* * * * * *

*983 ... I've heard enough with relation to flying, period. I will listen to any kind of legal arguments and et cetera from the other at the end of this matter. But I do not care, for the record, any more with relation to flying, whether they are scared to fly or whether you're a pilot, et cetera or so forth. I have heard enough evidence on this to make a decision, as far as that is concerned.
Now, whether you have rights, I think you're arguing a legal matter that you want the Court to consider. I will make that ruling, at the time, if you have any law. But, I don't think there's any particular law. But, If you have any, I would certainly  I will allow you, always, to make an argument to the Court, briefly.
In his final opinion the chancellor offered these comments:
As to the motion for requirement of flying in a private plane, the Court is concerned primarily with the best welfare of the children. I do not think that there has been shown a need for these children to fly in a private plane. The mother has no objection to the children's flying on a commercial plane. The Court denies the injunctive relief for the flying in a private plane and the children's receiving flying lessons.
Now, with these facts in mind, we turn to Mord's assignment:

THE TRIAL COURT COMMITTED MANIFEST ERROR IN REFUSING TO ISSUE AN ORDER ENJOINING DEFENDANT/APPELLEE PERMANENTLY FROM INTERFERENCE WITH THE EXERCISE OF PLAINTIFF/APPELLANT'S VISITATION RIGHTS.

A.

What are the rights of a non-custodial parent?
A non-custodial parent's right to visitation has been described as "a right more precious than any property right." See, Biamby v. Biamby, 114 A.D.2d 830, 494 N.Y.S.2d 741, 742 (1985). It is crucial that children establish a child parent relationship with both parents. See, Cox v. Moulds, 490 So.2d 866, 870 (Miss. 1986); White v. Thompson, 569 So.2d 1181, 1183 (Miss. 1990); and Premeaux v. Smith, 569 So.2d 681, 684 (Miss. 1990) (Sullivan, J. and Hawkins, P.J., dissenting). Accord Smith v. Smith, 793 P.2d 407, 411 (Utah App. 1990) (The best interests of a minor child are promoted by having the child respect and love both parents) (emphasis in original); see also, Bartlett, Rethinking Parenthood as an Exclusive Status: The Need for Legal Alternatives when the Premise of the Nuclear Family has Failed, 70 Va.L.Rev. 879, 909 (1984) (child's relationship with non-custodial father is separate from relationship with custodial mother but equally important to child's well being) (citation omitted).
So important is the child's right and a non-custodial parent's right to develop this relationship, some courts have permitted a change of custody where it is determined that the custodial parent has interfered with a non-custodial parent's visitation rights. Woncik v. Woncik, 82 N.C. App. 244, 346 S.E.2d 277, 280 (1986); Keating v. Keating, 147 A.D.2d 675, 538 N.Y.S.2d 286, 292 (1989) (Balleta, J., dissenting) (Custodial parent's interference with custodial parent's visitation rights is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent) quoting Entwistle v. Entwistle, 61 A.D.2d 380, 384-85, 402 N.Y.S.2d 213 (1978). Accord Lopez v. Lopez, 97 N.M. 332, 639 P.2d 1186, 1189 (1981); Smith, supra, 793 P.2d at 411.
In Cox, supra, this Court provided the following discussion of the rights of a non-custodial parent:
Certainly the rights and responsibilities of the parent having custody following a divorce are paramount with respect to matters of schooling, discipline and the like ... We are afraid that by labeling the rights of the non-custodial parent "visitation" we imply an inordinate subordination of those rights in quality. That there will be no misunderstanding *984 in the future the chancellor should approach the fixing of visitation rights with the thought in mind that, absent extraordinary circumstances militating to the contrary, the non-custodial parent will during the periods of visitation have broad authority and discretion with respect to the place and manner of the exercise of same, subject only to the time constrictions found reasonable and placed in the decree ... The approach we mandate is based upon the premise of our law in this area: that children of divorced parents should be encouraged to have a close, affectionate and under the circumstances, as normal as possible a parent-child relationship.
490 So.2d at 870 (citations omitted); see also, Hand, Mississippi Divorce, Alimony and Child Custody, § 22-2 (2d. ed. 1987) (non-custodial parent has same rights  to protect educate, and maintain children  as custodial parent; however, neither parent is permitted to expose child to physical danger). Cf. Newsom v. Newsom, 557 So.2d 511, 517 (Miss. 1990) (chancellor has the power to restrict visitation in circumstances which present an appreciable danger of hazard cognizable in our law).
Absent a finding that a non-custodial parent's visitation is detrimental to the child, this Court has been reluctant to alter visitation arrangements. For example, in Dubois v. Dubois, 275 So.2d 100 (Miss. 1973), the wife was granted a divorce as a result of her husband's adultery. Id. at 101. In the divorce decree, the wife was awarded custody of the children, and the husband was granted visitation privileges. His visitation privileges, however, were limited, and he could not take his children out of Rankin County without prior approval from the court. Id. In addressing whether this restriction could be upheld, this Court stated:
In the instant case there is no testimony in the record which indicates that it would be detrimental to the welfare of the children for the father to take the children out of Rankin County within the time when he is permitted to visit with them. There is no showing that the father intends to take the children to visit the woman who is said to have been the cause of the divorce, and until the contrary is shown, we see no plausible reason to restrict the father's visits with his children to Rankin County.
Id. Cf. Harris v. Harris, 343 So.2d 762, 764 (Miss. 1977) (court cannot dictate to parent what religion child must follow "so long as [the religion] d[oes] not involve exposing [child] to physical danger or to what society in general deems immoral practices).[3]

B.

The Case Sub Judice.
In the chancellor's opinion filed in this case, there is no indication that the court found that the children's flying with their father would either be detrimental to their welfare or endanger their lives. The court simply stated: "I do not think that there has been shown a need for these children to fly in a private plane. The mother has no objection to the children's flying on a commercial plane." (Vol. II, T. 41). In addition to these findings, the record simply demonstrates that Peters did not want the children to fly with their father because she considered him inexperienced. She also thought that it was dangerous to fly in his single-engined airplanes. The evidence, however, indicates that the airplanes were safe.
There is nothing in the evidence which shows that Mord's flying would endanger the children's lives.[4] There is nothing in *985 the record which establishes that the children were opposed to flying or taking flying lessons.[5] Simply because the mother does not want the children to fly is not enough to deny the father the right to either provide lessons or fly his children during his visitation hours.
Generally, most cases involving a conflict between the custodial and non-custodial parent and their relationship with their child primarily are focused on the parents' differences in either the education or the religion of the child. See, Harris, supra, 343 So.2d 762; Fisher v. Fisher, 118 Mich. App. 227, 324 N.W.2d 582 (1982); see also, Annotation, Religion as Factor in Child Custody and Visitation Cases, 22 A.L.R.4th 971, § 13 (1983); and Annotation, Non-custodial Parent's Rights as Respects Education of Child, 36 A.L.R.3d 1093 (1971).
Mord has alerted this Court to a very appropriate and analogous case to the case sub judice. In Eichelberger v. Eichelberger, 2 Va. App. 409, 345 S.E.2d 10 (1986), the narrow question before that court was whether a custodial parent could restrict the child's recreational activity when the child was visiting the non-custodial parent. Id., 345 S.E.2d at 11. In Eichelberger, after the parties were granted a divorce, the wife was granted custody of the three children. They visited their father frequently.
For his youngest child's eighth birthday, the father bought him a mini trail bike, which had a maximum speed of twenty-five miles per hour and was designed for use by children five to twelve years of age. Id. Under the father's supervision, the child rode his mini bike in the fields and pastures surrounding the father's home. The mother objected to the child's riding the mini bike because he is "a small child, is somewhat aggressive and often uses poor judgment." Id. She then initiated proceedings to require her ex-husband to dispose of the mini bike. After the hearing the trial court, without finding that the child's mini bike riding presented a serious danger to his health or safety, ordered the father to not permit his child to ride the mini bike. The trial judge came to this conclusion because the wife as custodial parent had the right to make this decision for the child.
In reversing the lower court, the appellate court provided the following discussion:
The relationship between a child and non-custodial parent should not be subject to the dictates of the custodial parent unless circumstances justify placing restrictions or conditions on the visitation privileges. Each case may require a court to exercise considerable judgment in placing conditions upon the frequency, duration, place, and extent of visitation, depending upon such factors as the age, relationship, emotional and physical condition of the child or parent; the parents' maturity and ability to responsibly care for a child; the location, availability and desires of the child and parents  to list a but a few. A change in circumstance may necessitate either a complete change in custody, modification of joint or split custody arrangements, or the imposition or removal of conditions on either the rights or responsibilities of a non-custodial parent. But, when visitation privileges have been liberally granted without restriction, absent a finding by the court that the non-custodial parent has acted without concern for the child's well-being or best interest, has demonstrated irresponsible conduct, has interfered with basic decisions in areas *986 which are the responsibility of the custodial parent, or finding that the activity which is questioned by the custodial parent presents a danger to the child's safety or well-being, neither the custodial parent nor the court may intervene to restrict activities during visitation.

Id. at 12 (emphasis added)
We agree with the above discussion. Otherwise custodial parents could prohibit their children from riding with their non-custodial parent in a sports car. After all, we take judicial notice that more deaths occur on our roads than in our skies. Simply put, our roads are far more dangerous than our skies. Were we to affirm the chancellor's position, as he explained it in his opinion, endless litigation possibly would result. We can imagine custodial parents coming to court based on unjustified fears and apprehensions and attempt to prohibit their children from learning how to drive, fish, hunt or swim when a non-custodial parent is exercising his or her visitation.[6] We cannot affirm the chancellor's conclusion, and therefore, we reverse and render this cause.
REVERSED AND RENDERED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., dissents.
PRATHER, J., not participating.
NOTES
[1] On recross, however, Peters admitted that the stunt flying occurred when the children were much younger  probably prior to their divorce or shortly thereafter when Russell was five or six and Emily was three or four.
[2] Not only did Mord have a pilot's license, he is a member of the Aircraft Owners & Pilots Association.
[3] In Cox, supra, the chancellor had entered an order restricting the father's visitations with his daughter at his ex-mother's-in-law house. This court reversed and held that in order for the chancellor to restrict visitation in this manner she would have to find "something approaching actual danger or other substantial detriment to the children." 490 So.2d at 868.
[4] During the hearing Peters entered into evidence an article from a magazine which indicated that most flying accidents involved pilots between thirty-five and thirty-nine years of age, who were engaged in personal flying and had between 100 and 499 flying hours under their belts. Mord, who was born in 1950, was thirty-eight or thirty-nine years old at the time of the hearing.

Statistics aside, Peters did not offer into evidence anything which demonstrated that Mord's flying would endanger the children. As a matter of fact, Mord is a certified pilot and his airplanes are inspected on a timely basis. Peters, similarly failed to demonstrate that taking flying lessons would endanger their lives.
This notwithstanding, it is clear that the chancellor simply rejected this evidence. No matter what evidence Mord may have presented the chancellor's statements reflected that he simply "d[id] not care," and he would have made this ruling or a similar ruling regardless.
[5] One wonders why the children did not testify. They could have provided helpful testimony. For example, there is no indication that the children wanted to learn how to fly an airplane.
[6] The list of activities could include a number of other things such as ballet, gymnastics, baseball or football. Serious injuries could result in all of these activities as well as many activities that children participate in everyday. Until a custodial parent can prove that the non-custodial parent demonstrated irresponsible conduct or did not consider the best interest of the child or that the activity would actually endanger or result in injury to their children, she or he is not authorized to interfere with the former spouse's visitation rights.