490 So.2d 866 (1986)
David Andrew COX
v.
Knoxine J. Cox MOULDS.
No. 55568.
Supreme Court of Mississippi.
June 4, 1986.
*867 Dolan D. Self, Jr., Herring & Self, Canton, for appellant.
C.R. Montgomery, Rebecca B. Cowan, Montgomery, Smith-Vaniz, McGraw & Ellington, Canton, for appellee.
Before ROY NOBLE LEE, P.J. and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal presents an important question regarding the authority of the Chancery Court to place restrictions upon a non-custodial parent's exercise of visitation rights with his or her children. We decide the case by reference to the view of our *868 law that, however denominated, the visitation rights of the non-custodial parent should be tantamount to custody with respect to the place and manner of exercise of same, except in the most unusual circumstances. Because something approaching actual danger or other substantial detriment to the children  as distinguished from personal inconvenience or possible offense to middle class sensibilities  is required before a chancellor may restrict visitation to the home of their maternal grandmother, we reverse.
There are nine other assignments of error presented, two of which will be discussed briefly and the remainder of which merit neither comment nor reversal.

II.
David Andrew Cox is an adult resident citizen of Madison County, Mississippi. He was the original Plaintiff below and subsequently the Cross-Defendant below. He is the Appellant here.
In 1970 David and Knoxine J. Cox were married. They have two children who are the subject of this proceeding, namely Kelly LeAnne Cox, born January 18, 1971, now fifteen years of age, and Barry Nelson Cox, born March 22, 1975, now ten years of age.
By final decree of the Chancery Court of Madison County, Mississippi, David and Knoxine were divorced on November 28, 1975. Custody of the two children was vested in Knoxine "subject to the right of David Andrew Cox to visit with the children at any and all reasonable times". David was also ordered to pay child support at the rate of $75.00 per month.
Knoxine on July 3, 1980, married Arlon Moulds and now resides in Hattiesburg. Also residing in Hattiesburg is another important individual in these proceedings, the children's maternal grandmother, Mrs. Knox Jacobs.
There is no need to detail the history of the unworkability of the flexible but vague 1975 reasonable visitation rights decree. Suffice it to say that the parties could not agree regarding the nature and extent of David's rights with the children.
On May 5, 1981, David filed his first petition to modify. Two amendments later, the matter was before the Chancery Court on David's request that the visitation rights be made specific together with Knoxine's cross-claim for an increase in child support. On January 10, 1984, the Chancery Court entered its order making the visitation provisions specific and including the provision here in controversy that David
shall visit said minor children solely at the home of Mrs. Knox Jacobs [his ex-mother-in-law] and/or within the Hattiesburg, Mississippi area.
The chancellor also ordered that David's child support payments be increased to $150.00 per month and that he pay to Knoxine $500.00 as attorneys fees.
As indicated, David appeals to this Court. As indicated, we reverse on the ground of his principal complaint, vacate the award of attorneys fees, and otherwise affirm.

III.
The matter of the increase in child support need not detain us long. The record reflects that at the time of the original decree in 1975 David was employed on a hourly basis earning between $2.00 and $3.00 an hour. At that time he was ordered to pay $75.00 per month as child support for two children. At the time of the hearing below, David was employed as an inspector and monitor at Sewell Plastics at a salary of $5.89 per hour. In this setting the chancellor increased David's child support obligation to $150.00 per month for both children.[1]
*869 Before a final decree for child support may be modified our law requires the moving party to show "material change of circumstances of one or more of the interested parties  the father, mother, or child  arising subsequent to the original decree". Adams v. Adams, 467 So.2d 211, 214 (Miss. 1985); Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). Possible factors which may constitute a material change in circumstances are increases in the children's expenses; a substantial increase in the financial resources of the non-custodial parent; and inflation since the original decree. Tedford v. Dempsey, 437 So.2d 410, 418 (Miss. 1983). Suffice it to say that each of these circumstances is shown here. The chancellor's holding that child support should be increased is supported by substantial evidence and in his view of the evidence is consistent with our law regarding the subject.

IV.
By far the most serious issue in this case concerns the chancellor's order that David exercise his visitation rights only at the home of his ex-mother-in-law or in the city of Hattiesburg, Mississippi. A review of the pertinent facts is in order.
This issue arose below in the procedural context of David's twice amended motion to modify. This was not an ordinary motion to modify, for David has not sought to modify or change custody. He merely asked to have the court provide an order making his visiting rights specific with reference to times, dates and places.
In cases such as this our familiar change in circumstances rule, see, e.g., Cheek v. Ricker, 431 So.2d 1139, 1144 (Miss. 1983), has no application. This is because the Court is not being asked to change the permanent custody of the children. Sistrunk v. McKenzie, 455 So.2d 768, 770 (Miss. 1984). All that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interests of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.
At the time of their separation in 1975, David and Knoxine were living in a mobile home in Madison County, Mississippi. David has continued to reside in Madison County and lives very near to the area where he and Knoxine once lived. The home is situated in rural Madison County and has five rooms  a living room, a kitchen, two bedrooms and a bath, plus a porch. Permanent residents of the home include, in addition to David, his mother and his sister.
The evidence reflects that David Andrew Cox is a responsible citizen. He is 40 years old and has attended William Carey College. He has a two year Associate of Arts degree from Clark College in addition to the credits earned at William Carey. He is a veteran of the Vietnam war. He has full time employment with Sewell Plastics in Canton, Mississippi. He is Sunday School Director at Franklin Baptist Church in Madison County. While there is no doubt that David's circumstances are more modest than those enjoyed by Knoxine and the children in Hattiesburg, David's circumstances are hardly un-American.
In this setting, we note that the chancellor stated
The court is greatly concerned about the best interests of the children in situations such as this and does not find the home in which the father lives to be adequate to meet the needs of an almost thirteen year old girl who is reaching womanhood and needs her privacy in sleeping.
We take judicial notice that there are at this time literally thousands of thirteen year old girls growing up without untoward consequences in homes as modest *870 as David's, if not more so. See Rule 201(b), Miss.R.Ev., eff. January 1, 1986. The chancellor went on to state
It is evident that the father cares for his children and even more so that the children's [paternal] grandmother, Mrs. Ena Cox, loves her grandchildren and would like to visit with them also.
Notwithstanding, the court entered the order restricting visitation to Hattiesburg or the home of the maternal grandmother, David's ex-mother-in-law.
Certainly the rights and responsibilities of the parent having custody following a divorce are paramount with respect to matters of schooling, discipline and the like. Clements v. Young, 481 So.2d 263, 267 (Miss. 1985). We are afraid that by labeling the rights of the non-custodial parent "visitation" we imply an inordinate subordination of those rights in quality. That there will be no misunderstanding in the future the chancellor should approach the fixing of visitation rights with the thought in mind that, absent extraordinary circumstances militating to the contrary, the non-custodial parent will during the periods of visitation have broad authority and discretion with respect to the place and manner of the exercise of same, subject only to the time constrictions found reasonable and placed in the decree. Overnight visitation with the non-custodial parent is the rule, not the exception; indeed, a non-custodial parent is presumptively entitled during reasonable times to overnight visitation with the children. The approach we mandate is based upon the premise of our law in this area: that children of divorced parents should be encouraged to have a close, affectionate and, under the circumstances, as normal as possible a parent-child relationship. To be sure, this ideal is seldom achieved. This, however, is no reason for the law to impose obstacles to that achievement.
These things said, we have examined the record to determine if there are any unusual circumstances that would warrant denying David overnight visitation with the children. The first reason proffered  that the children don't want to stay overnight with David  is clearly insufficient as a matter of law (and we do not understand the chancellor to have credited it.) While there is nothing wrong with the children being heard regarding their wishes, our law proceeds on the assumption that they are nevertheless children and, thus, more interested in the desire of the moment than in considering their long range needs for the development of a healthy relationship with both parents where that is possible. See Miss. Code Ann. § 93-11-65 (Supp. 1985).
There was also testimony concerning the emotional well-being of David's sister. Because the sister was a full time occupant of the home in which David proposed to keep the children overnight, the chancellor admitted testimony in this regard. It was shown that David's sister, Barbara Cox, is in her late thirties and is a retired state employee for the past three years. She has been institutionalized at least twice for "nervous disorders" but does not require regular treatment by a psychiatrist. She enjoys the children's visits. There is nothing in this testimony remotely suggesting that the presence of the sister in the home creates any potential hazard to these children, physical or otherwise.
The chancellor's sole express reason for the restrictive visitation opportunities was his concern about the sleeping arrangements for the daughter, who at the time of the hearing was 13 years of age. The chancellor expressed his concern about the needs for this young girl, Kelly LeAnne, for privacy at night. We find nothing in the record to reflect David's insensitivity to those needs. Obviously, someone is going to have to sleep on the couch when the children come to visit David under the present arrangements, but this is hardly a reason for denying overnight visitation.
The case is put in context by a realization that in 1975 David and Knoxine and the children lived in circumstances quite similar to those of David at present. Had the parties not divorced, it seems likely that *871 the children would be living in those circumstances today, and no one would dream of suggesting that the welfare department, the youth court or anyone else should consider removing them, not because of the sensibilities of a thirteen year old girl coming of age or otherwise.
The other side of the coin is that aspect of the judgment which restricts David's visitation, at least in part, to the home of his ex-mother-in-law. We have no doubt of the sincerity of Mrs. Jacobs in wanting to be of assistance in this matter. Yet it requires no acceptance of prevailing myths about a man's relationship with his mother-in-law to know that restriction of child visitation to the home of his ex-mother-in-law simply will not do. It is difficult to think of circumstances more inhibiting to a father's development and maintenance of a normal and healthy father-child relationship with the children of his broken marriage.
We consider that the chancellor's determination that David not be allowed overnight visitation with these children was manifestly erroneous. We find no substantial evidence in the record supporting the proposition that such overnight visitation would present any appreciable danger of hazard cognizable in our law.[2]See McCormick v. McCormick, 293 So.2d 454, 456 (Miss. 1974).
The provisions of Subparagraph C of the Supplemental Opinion filed December 21, 1983, and Subparagraph C of the Judgment entered January 10, 1984  these being the paragraphs which limit visitation to the home of Mrs. Jacobs and the Hattiesburg area  are reversed and rendered. Today's adjudication, of course, may require a reconsideration of the entire visitation scheme. Under these circumstances we will vacate the visitation scheme heretofore provided by the chancellor but, with the one exception just noted, without prejudice. We remand the case to the Chancery Court of Madison County with instructions that a decree be entered reasonable and appropriate under all of the circumstances and consistent with our law making specific provision for reasonable visitation rights in David Andrew Cox as the father of these two children. Without in any way intending to direct the chancellor as to what would be reasonable under these circumstances, we nevertheless call attention to our recent decision in Crowson v. Mosley, 480 So.2d 1150 (Miss. 1985) wherein we discussed the question of what specifically constitutes reasonable visitation privileges.

V.
At trial the chancellor awarded Knoxine $500.00 in attorneys fees. While the reason for this award is not specified, it would seem to have been attendant upon her success in resisting David's overnight visitation claims as well as her success in obtaining the decree for increased child support from $75.00 per month to $150.00 per month.
As we have held above, Knoxine is now deprived of her success in the court below on the overnight visitation issue. The increase in child support, which we have affirmed, involves circumstances less than compelling with respect to the justness of an attorneys fee award. The record reflects that David was paying $150.00 per month voluntarily anyway. To be sure, he could have dropped back to the $75.00 per month figure and not been in violation of any order or decree of the court. But to say that Knoxine had to come to court in order to obtain the $150.00 child support is simply not accurate under these facts. Moreover, it appears that the cross-claim for increase child support may well have been a retaliatory move by Knoxine once David initiated the proceedings to make more certain his visitation privileges. We further note that Knoxine is employed as a *872 school teacher making $18,000.00 a year and that her new husband, Arlon Moulds, is not shown to be impecunious.
Under these circumstances we vacate the award of attorneys fees and remand the matter to the Chancery Court without prejudice to the chancellor's consideration of whether at the end of all proceedings attorneys fees, if any, should be allowed either party.

VI.
David presents us with five assignments of error regarding items of evidence that, either he wanted admitted but were refused by the court or which were admitted over his objection. We have reviewed all of these questions and find that the chancellor was well within the discretion and latitude afforded him under our rules of evidence in regard to such matters. The points are not of sufficient moment to require further discussion except to say that no reversible error appears.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] The record reflects that, with the consent of the parties, a temporary order was entered August 19, 1981, providing that, for the period from September 1, 1981 until August 31, 1982, David's child support obligations were increased to $150.00 per month. Although this order appears not to have been renewed, the record suggest that at the time of the hearing below, September 29, 1983, David was still making child support payments in these increased amounts. Our holding on the issue here tendered, however, is in no way predicated upon these facts.
[2] Nothing said here should be taken as suggesting that there will never be circumstances which would justify restricting visitation rights to the home of the custodial parent or a relative of the custodial parent. See Ross v. Segrest, 421 So.2d 1234, 1235-36 (Miss. 1982). Such circumstance  which we are confident will be the exception and not the rule  are simply not present here.