# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CA-01453-COA

**VIRGINIA KEARSE HADDON**                                    **APPELLANT**

**v.**

**WERNER SCOTT HADDON**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/97 |
| TRIAL JUDGE: | HON. HON. HARVEY T. ROSS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CHA CERY COURT |
| ATTORNEY FOR APPELLANT: | STEPHEN L. THOMAS |
| ATTORNEY FOR APPELLEE: | W.O. LUCKETT, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | CHANGE IS CHILD VISITATION AWARDED TO FATHER. |
| DISPOSITION: | AFFIRMED - 04/20/1999 |
| MOTION FOR REHEARING FILED: | 5/4/99 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

EN BANC.

KING, P.J., FOR THE COURT:

¶1. The appellant, Virginia Kearse Haddon, appeals from an order of the Coahoma County Chancery Court granting the appellee's motion for modification of visitation. Feeling that the chancery court judge abused his discretion in substantially altering the visitation schedule, Ms. Haddon raises the following issues on appeal:

**1. Does an award of primary custody mean anything? If so, did the lower court's order of October 14, 1997, modifying Appellee's visitation privileges from one weekend per month under the control and supervision of Appellee's mother to six months of unsupervised visitation per year, amount to a change of custody of a 16 month old child, as opposed to merely a change in visitation, recognizing that the custody order originally entered in this cause on December 30,**

**1997 granted the Appellant primary physical custody of the involved infant?**

**2. If the lower court's decision amounted to a change in the award of custody, was there any evidence of a material change in circumstances of custodial parent (Appellant) that was shown to have adversely affected the interest of the child?**

**3. If the decision herein appealed was, as described by the lower court, merely a change in visitation privileges, was there the requisite showing that the prior visitation schedule was not working?**

**4. Irrespective of whether the lower court's order was a change in custody or a change of visitation privileges only, did the order promote the best interest of the 16 month old child?**

**5. What is the effect of the refusal of the lower court to enter specific findings of fact and conclusions of law, pursuant to Rule 52(b) of the M.R.C.P.?**

## FACTS

¶2. Virginia Kearse Haddon and Dr. Werner Scott Haddon were married on December 4, 1993, in Columbia, South Carolina. One child was born of this union, namely, Nicholas Kearse Haddon, on May 29, 1996.

¶3. In the summer of 1996, Mrs. Haddon and Nicholas moved to Clarksdale because Dr. Haddon was to establish a medical practice there. Dr. Haddon did not move with the family initially, but remained in Houston, Texas until October of that same year. Three weeks after Dr. Haddon reunited with his family in Clarksdale, the couple separated. On October 19, 1996, Mrs. Haddon moved with Nicholas to Orangeburg, South Carolina to live with her parents. Dr. Haddon remained in Clarksdale.

¶4. On November 18, 1996, Dr. Haddon filed a complaint for custody of Nicholas in the Coahoma County Chancery Court. Mrs. Haddon filed a parallel action in South Carolina. On December 30, 1996, the parties announced to the Coahoma County Chancery Court that they had reached a settlement. Consistent with the settlement, the chancellor entered an order awarding joint legal custody to Mrs. Haddon and Dr. Haddon, with Mrs. Haddon enjoying primary physical custody. Dr. Haddon was awarded visitation with Nicholas one weekend each month. This visitation was to take place in the home of and under the supervision of Dr. Haddon's mother, who resided in Cary, North Carolina until Nicholas reached two years of age; thereafter, visitation would be unsupervised. Additionally, Dr. Haddon was awarded one week visitation with Nicholas during Christmas and two weeks in the summer.

¶5. The December 30, 1996 order also provided that after Nicholas reached age two, the parties might alter the visitation schedule to comport with the travel and schedule requirements of Dr. Haddon and Mrs. Haddon.

¶6. On July 9, 1997, Dr. Haddon filed a motion to modify child custody or, in the alternative, to substantially alter the visitation schedule. On October 14, 1997, the chancellor made the following detailed findings:

> Nicholas was born May 29, 1996. [sic] and is now almost two years of age. He apparently will start kindergarten at age five which will occur in the year 2001. Until that time an opportunity exists here to

allow the father to establish a meaningful parental bond with his child. Due to the distance involved and attendant travel expenses, frequent weekend visitations are inappropriate. In order to allow both joint parents maximum association with the child during this period a change of visitation arrangements from those set out in the December 30th decree must be made. Accordingly, during the period until Nicholas starts to [sic] school Scott will be entitled to the following visitation:

a) During the remainder of 1997, from the weekend of November 15, until December 1.

b) During the year 1998, February, April, June, August, October and December.

c) During the year 1999, February, April, June, August, October and December.

d) During the year 2000, February, April, June, August, October and December.

e) During the year 2001, February, April, June, August, October and December.

When Nicholas reaches age five in the year 2001, the above scheduling will cease. Primary physical custody of Nicholas will *continue* with [Virginia] and at that time the Court following an appropriate hearing will establish a visitation schedule for [Dr. Haddon]. (emphasis added).

## Standard of Review

¶7. This Court will not disturb a chancellor's ruling on a factual issue unless (1) the chancellor's findings are not supported by substantial credible evidence, (2) the chancellor has either committed manifest error, or (3) the chancellor applied an erroneous legal standard. *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997). Further, on visitation issues, as with other issues concerning children, the chancery court enjoys great discretion in making its determination of what is in the best interest of the child. *Clark v. Myrick*, 523 So. 2d 79, 82 (Miss. 1988).

¶8. Matters concerning child custody and visitation are squarely within the discretion of the chancellor. Barring an abuse of that discretion, this Court is loathe to disturb those findings.

¶9. We will not reverse a chancellor's ruling because he failed to use the magic words "best interests of the child." There is no magic words test in matters concerning the welfare of children. Rather the appropriate test is whether the record demonstrates that the trial court properly weighed the evidence and then rendered a decision which was in the best interest of the child. Where from the record the chancery court's analysis reflects that it weighed and made its decision based upon the best interest of the child, we will not disturb its findings.

## Discussion

¶10. Mrs. Haddon argues that the chancellor's modification of the visitation schedule from one weekend a month to visitation of one month, every other month is tantamount to a change in custody. Specifically, Mrs. Haddon contends that absent a change in circumstances, a finding that a change in the visitation schedule is in the child's best interests, or proof that the old visitation arrangement is unworkable, the chancellor abused his discretion in altering the prior visitation order.

¶11. Unlike child custody matters, modification of a noncustodial parent's visitation does not require a change in circumstances. As our supreme court has held in *Cox v. Mould*, 490 So. 2d 866, 869 (Miss.

1986), all that is required is a showing that the current schedule is not working.

¶12. In the case *sub judice*, Mrs. Haddon and Nicholas resided in South Carolina while Dr. Haddon resided in Clarksdale. Dr. Haddon testified during the hearing of this matter that due to the distance involved and the relatively short period of visitation, the current visitation schedule did not yield the benefits of association with the child that he desired. The chancellor obviously agreed with Dr. Haddon and granted him monthly visitation with Nicholas until he reaches age five.

¶13. It has long been the policy of our state that it is in the best interest of children of divorced or separated parents to be provided the opportunity to develop a meaningful relationship with both parents. In keeping with this sentiment, it has also been the position of our courts that the visitation period should be balanced against the amount of time the child has available to spend with the noncustodial parent. For example, in *Crowson v. Moseley*, 480 So. 2d 1150, 1152 (Miss. 1985), the supreme court held that one or two weeks visitation during summer vacation was not sufficient for a noncustodial parent.

¶14. In this case, the record clearly reflects a finding by the chancellor that a full relationship with each parent was in the best interest of Nicholas. Recognizing the limitations of the present visitation arrangement and the opportunity to allow both parents to enjoy "maximum association" with Nicholas prior to his reaching school age, the chancellor crafted a visitation schedule that would allow Dr. Haddon and Nicholas to develop a nearly normal bond with each other.

¶15. While the hardship on a noncustodial parent cannot be the primary consideration in a decision to alter a prior visitation schedule, it is not a prohibited consideration. *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992). The chancellor found that the geographical distance between the parents was prohibitive to the child enjoying the fullest possible relationship with both parents. In an effort to address this problem, the chancellor determined that extended visitation during the child's pre-school years was in his best interest.

¶16. It is important to note that the chancellor's order is in effect only until Nicholas reaches school age. Once Nicholas begins school, his schedule will only allow for extended visitation periods with Dr. Haddon during regular school holidays and summer vacation. This Court does not find this to be either manifest error or an abuse of discretion.

¶17. Finally, Mrs. Haddon argues that the chancellor erred in denying her motion to enter specific findings of fact and conclusions of law pursuant to M.R.C.P. 52.

¶18. We agree that upon proper motion or whenever the subject matter of a case is complex, a trial court should enter separate findings of fact and conclusions of law. While the trial court did not enter separate findings of fact and conclusions of law, we decline to find it in error on this point because the subject order was clear and detailed. Although not bearing the label, "Findings of Fact and Conclusions of Law," the chancellor's order served the same purpose. We find that it would have been duplicative and an inefficient use of judicial resources for the chancellor to enter separate findings of fact and conclusions of law in this matter.

¶19. **THE JUDGMENT OF THE COAHOMA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS,, JJ., CONCUR. MCMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.,**

**AND PAYNE, J.**

McMILLIN, C.J., DISSENTING:

¶20. I respectfully dissent. In my view, there was not sufficient justification for the chancellor to so drastically modify a visitation schedule that had been negotiated by the parties and approved by that same chancellor just six months prior to the commencement of this proceeding. While it is true that a modification of visitation does not require proof of a material change in circumstances, it would, nevertheless, seem to be a fundamental precept that a chancellor may not arbitrarily and capriciously modify an existing schedule merely because of the dissatisfaction of one parent with that schedule - especially in the case where that same parent, only six months earlier, affirmatively represented to the chancellor that the matter had been resolved to his satisfaction and the chancellor had, as the law requires, concluded that the agreed-upon schedule was "adequate and sufficient." Miss. Code Ann. § 93-5-2 (Rev. 1994).

¶21. *Cox v. Moulds* suggests that the chancellor may modify an existing visitation schedule upon a showing that the schedule is not working. *Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986). I am aware of nothing in the record, other than Dr. Haddon's realization that he had struck a bargain that he later regretted, that would support a finding that the existing schedule was not working within the meaning of *Cox v. Moulds*. The considerations used by chancellor to justify the modification existed with equal force when the original agreement was presented to him for approval. Had there been a genuine concern that the proposed visitation schedule was not in the best interest of the child, the time to raise that issue was when the agreement was first presented. Not surprisingly, since both parents represented to the chancellor that the schedule *was* in the child's best interest, the chancellor apparently did not raise with Dr. Haddon any concern that the chancellor might have had that the schedule would interfere with this non-custodial parent's ability to maintain a good relationship with the child. If the schedule was not working to the optimum in July when Dr. Haddon filed his modification petition, it was - at least as far as this record indicates - working exactly as the parties were in agreement only a few months previously that it ought to operate.

¶22. I would hold that such a dramatic modification on such a sparse showing, consisting largely of Dr. Haddon's complaints about the excessive travel required of him under the schedule, was an abuse of the chancellor's discretion in such matters as being nothing more than an arbitrary and capricious reconfiguration (and a rather substantial one, at that) of an already-existing judgment.

**SOUTHWICK, P.J., AND PAYNE, J., JOIN THIS SEPARATE WRITTEN OPINION.**