IRVING, J.,
concurring in part, dissenting in part:
¶ 16. I concur with the majority’s decision to affirm the chancellor’s denial of the modification sought by the father in his counterclaim. However, I must respectfully dissent from the majority’s refusal to consider the father’s second assignment of error. The majority acknowledged that the chancellor denied the modification sought by the father and the mother but, while not granting the exact relief sought by the mother, nevertheless modified the joint custodial arrangement which had been entered at the time of the divorce. The majority concluded it would not address the father’s assignment of error on this point because “the father’s brief contains no separate argument or citation to authorities on that proposition.”
¶ 17. The second issue, assigned in the father’s statement of issues, reads:
2. Whether the trial Court erred in its Judgment [sic] in effecting a modification of the joint child custody arrangement set forth in the parties’ prior Judgment of Divorce without making an express finding and adjudication that a material change in circumstances which adversely affected the welfare and best interest of the minor child, [J.R.S.], when the evidence of record is considered.
¶ 18. In the father’s initial brief, he combined his argument of issues one and two, and as observed by the majority focused his argument on issue one. However, during that combined argument, the father set forth the legal authority embodying the prerequisites for modifying a custody order. In the father’s reply brief, he addressed issue two in a separate argument and again directed us to legal authority setting forth the requisite threshold requirements for modification of a prior custody order. Given this state of the father’s appellate briefing, I believe we are compelled to address his argument as to his second issue.
¶ 19. In his memorandum opinion, which was incorporated into the judgment, the chancellor made the following observation in his discussion of the issues:
The Court notes that there has been no prior independent determination by the Court of custody award serving the best interest and welfare of J.R.S. nor a determination upon application of the Al-bright factors of the relative fitness and qualification of these parents to exercise custody. [R.B.S.] and [T.M.S.] presented to the Court, and prevailed upon the Court to adopt,, [sic] their agreement which in essence asserted that they each were fit and proper persons to exercise custody of their son, and that their proposed joint legal and shared physical *622 custody would serve the best interest and welfare of J.R.S., who was then 2 & %2 years of age. At least one substantial change of circumstances has occurred, namely, at the time of [T.M.SJ’s filing herein J.R.S. was l & % years of age, and at the time of trial he was 6 & fe years of age, and that becomes material in view of school considerations.
(emphasis in original and emphasis added).
¶20. In his conclusions, the chancellor stated:
The Court finds no basis to invalidate nor to supplant the basic Joint Legal Custody [sic] agreement executed by T.M.S. and R.B.S. which carries with it the inference that both are fit custodial parents, and therefore the Court finds it reasonable to continue the Joint Legal Custody [sic] of J.R.S. with shared physical custody in the manner hereinafter ordered.
¶ 21. The chancellor then ordered:
1. That R.B.S.’s counter-complaint for award of sole custody of. [J.R.S.] to him and imposition of supervised only visitations permitted to [T.M.S.] be and is denied and dismissed with prejudice;
2. That [T.M.SJ’s petition for modification only as to the shared physical custody of [J.R.S.] be and is hereby granted to the following extent, namely:
Physical custody of [J.R.S.] shall be with [T.M.S.] at all times except for the shared periods by [R.B.S.] as follows: the week-end of each month in which the first, third and fifth Saturday falls, the week-end shared period to commence at 6:00 o’clock p.m. on Friday and terminate at 6:00 o’clock p.m. on Sunday; the summer vacation from school to commence five days after the school session ends and to terminate five days before the Fall school session begins, but with [T.M.S.] to have one week-end in June which shall include the third Saturday of June, and also one full week in July commencing at 6:00 o’clock p.m. on a Sunday and terminating at the same hour on the following Sunday and which week shall not include the Fourth of July but otherwise to be selected by her in writing at the beginning of the summer shared time with [R.B.S.], and also the week-end of the first Saturday in August; one-half of the Spring Break week of school, whichever half will adjoin a regular week-end shared period of [R.B.S.j’s; a portion of the Thanksgiving holiday commencing at 6:00 o’clock p.m. on Wednesday and terminating at 6:00 o’clock p.m. on Friday in even numbered years; not less than five full days at Christmas, said period to end at 2:00 o’clock pm. on Christmas Day in odd numbered years and to begin at the stated time in even numbered years; all of the day of the Sunday observed as Father’s Day, with the proviso that [T.M.S.] shall have custody all of the Sunday observed as Mother’s Day and that irrespective of any other provision for shared custody time with [R.B.S.]. The shared custody specified unto [R.B.S.] is awarded and intended expressly for the benefit of [R.B.S.] and is ordered to be exercised by [R.B.S.], not [his mother] acting in his stead and place, and should it become necessary for [R.B.S.] to obtain a caretaker for [J.R.S.] on occasion or occasions for a time period to exceed three hours duration he shall obtain the services of someone other than [his mother].
¶ 22. The original judgment of divorce approved, ratified, confirmed and incorporated the following custody provision contained in the Child Custody, Support, Visitation and Property Settlement Agreement executed by the parties:
That it is agreed that Party of the First Part and Party of the Second Part shall both share joint physical and legal custody or joint custody of the parties’ minor child, [J.R.S.], as defined, and set forth in Section 93-5-24(l)(a) of the Mississippi Code of 1972, as amended. That *623 Party of the First Part [the father], shall be awarded as his significant periods of physical custody of the parties’ minor son, [J.R.S.], each of the five (5) week days weekly from 8:00 a.m. until 5:00 p.m. hereafter, and further, every other weekend beginning Saturday, October 21, 1995, at 8:00 a.m., and continuing on each such weekend until 8:00 a.m. on the following Monday morning. That Party of the Second Part [the mother] shall be awarded as her significant periods of physical custody of the parties’ minor son, [J.R.S.], all other times, excepting only the following hereinafter described alternation of holidays and vacation periods. It is further agreed by Party of the First Part and Party of the Second Party that irrespective of the hereinbe-fore described significant periods of physical custody awarded unto each party, respectively, with their minor son, [J.R.S.], they shall alternate the major holidays of each year as follows: Party of the First Part shall have physical custody of the parties’ minor son during odd numbered years from December 25 at 3:00 p.m. through January 1 at 3:00 p.m., Thanksgiving Day and Easter Sunday, and during even numbered years from December 18 through January 1 at 3:00 p.m., the day following Thanksgiving Day and the Fourth of July; and Party of the Second Part during odd numbered years shall have physical custody of the parties minor son from December 18 until December 25 at 3:00 p.m., the day after Thanksgiving Day and July 4, and then Party of the Second Part during even numbered years shall have physical custody of the parties’ aforesaid minor son from December 25 at 3:00 p.m. until January 1 at 3:00 p.m., Thanksgiving Day and Easter Sunday; and further, each party shall have the right to uninterrupted physical custody of their minor son during one (1) two-week period, each year, for vacation purposes provided each party provides the other party with thirty (30) days advance notice of such vacation period of time.
¶ 23. As readily can be seen from the quoted provisions, the chancellor radically changed the physical custody provision of the original judgment of divorce. There was no allegation in the mother’s petition for modification as to what the material change in circumstances was that would warrant a modification of the original custody arrangement. Paragraph 2 of her petition simply alleged: “[t]he Defendant ... would show that since the rendition of the Judgment [sic] that there has been a material change in circumstances in and that [sic] the visitation is not in the best interest of the minor child. Said visitation should be modified to be in the best interest of the minor child.”
¶24. As stated, the chancellor noted only one change, the age of the child. The chancellor considered the change material “in view of the school considerations.” I fail to see how the child’s attaining school age becomes a material change. It was foreseeable at the time the chancellor approved the initial custody arrangements that the child would attain school age in a few years. Further, since the father was initially given physical custody from 8:00 a.m. to 5:00 p.m., I fail to discern why the child’s attainment of school age poses a problem or how his aging has become materially adverse to his interest. The father would simply pick the child up at 8:00 a.m., get him to school and return him to the mother by 5:00 p.m.
¶ 25. The change ordered by the chancellor was, in my humble estimation, more than simply adjusting the visitation schedule to smooth out some rough edges which he could have done without first finding a material change in circumstances sufficient to change the general or permanent custody from the father to the mother. See, e.g., Tighe v. Moore, 246 Miss. 649, 151 So.2d 910 (1963). Even the chancellor seemed to recognize that the evidence was insufficient to conclude that material changes adverse to the interest of the child *624 had occurred. That recognition lay in the chancellor’s observation that “[t]he Court finds no basis to invalidate nor to supplant the basic Joint Legal Custody [sic] agreement executed by [T.M.S.] and [R.B.S.] which carries with it the inference that both are fit custodial parents, and therefore the Court finds it reasonable to continue the Joint Legal Custody [sic] of [J.B.S].”
¶ 26. Notwithstanding the chancellor’s observation that nothing had occurred tantamount to a material change in circumstances, he proceeded to substantially alter the custody arrangement. I find this to be manifestly wrong and clearly erroneous.
¶ 27. In Haddon v. Haddon, 97-CT-01453-SCT, — So.2d -, 2000 WL 330348 (¶ 12) (Miss.2000) (quoting Clark v. Myrick, 523 So.2d 79, 83 (Miss.1988)), the Mississippi Supreme Court reversed this Court’s affirmance of the trial court’s change in a visitation schedule approved by the chancellor just six months prior to the petition for modification. There the supreme court observed:
In cases where the terms of visitation are at issue, our familiar change in circumstances rule has no application. Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986). This is true because the court is not being asked to change the permanent custody of the child. Cox, 490 So.2d at 869; Sistrunk v. McKenzie, 455 So.2d 768, 770 (Miss.1984). In Cox, this Court stated:

All that need be shown is that there is a prior decree providing for reasonable visitation rights which isn’t working and that it is in the best interest of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and at-tendantly vague.

Cox, 490 So.2d at 869 (emphasis added).
¶ 28. The judgment of divorce, wherein the parties agreed to the visitation arrangements' in this case, was filed on November 13, 1995. On October 16, 1996, eleven months later, the mother filed her petition for modification. The mother testified that she had remarried since the divorce and moved from Poplarville to Lumberton. The father still lived in Pop-larville. At the time of the filing of the petition for modification, the minor child was only four years old, not even school age. Although the mother had moved from Poplarville to Lumberton, she still worked in Poplarville. Her testimony was that her new home in Lumberton was between five and twenty miles from Poplar-ville. In an effort to bolster the evidence in support of her petition for modification, the mother testified that sometimes the child cried and complained about his stomach aching before he was dropped off at his father’s home in the mornings. This was essentially the evidence upon which the chancellor relied to change the original visitation or custody arrangements.
¶ 29. Pertinent language in Haddon speaks loudly and forcibly to the change in visitation issue in our case. In Haddon, the supreme court observed: “[i]t appears that little or nothing had happened between that time [the date of executing the agreed custody agreement] and Scott’s complaint for modification that could not have been, reasonably anticipated by the parties. Nicholas was older.” Haddon at (¶ 13). Likewise, in our case, little or nothing had changed in the eleven months between the original agreement and the date of the petition for modification, and nothing had changed that could not have been reasonably anticipated by the parties. Certainly the parties knew their minor child would get older and attain school age. There is not one shred of evidence indicating that the original visitation schedule was not working.
¶ 30. Because I cannot discern the evidence upon which the chancellor could *625 have concluded that the prior custody and visitation provisions were either not working or were vague and not specific, I must conclude that the chancellor’s decision to change the visitation schedule was manifestly wrong and clearly erroneous. Accordingly, I respectfully dissent.