848 So.2d 893 (2003)
Sherry Rena (Cosby) Surrette BRATCHER, Appellant,
v.
Kevin Lorenzo SURRETTE, Appellee.
No. 2002-CA-00201-COA.
Court of Appeals of Mississippi.
June 24, 2003.
*894 John Thomas Lamar, Senatobia, attorney for appellant.
Gerald W. Chatham, Hernando, attorney for appellee.
Before SOUTHWICK, P.J., LEE and GRIFFIS, JJ.
GRIFFIS, J., for the court.
¶ 1. Sherry Bratcher petitioned the trial court for modification of Kevin Surrette's visitation with the couple's minor child. She asserted that Surrette had sexually molested their child. The chancellor found that sexual abuse had not been proven by a preponderance of the evidence and refused to restrict Surrette's visitation with the child. Ms. Bratcher has perfected her appeal asserting the chancellor's decision was manifestly wrong. Finding no error, we affirm.

FACTS
¶ 2. In July of 2000, Sherry Bratcher and Kevin Surrette were awarded a divorce by the Chancery Court of the Second Judicial District of Panola County. The divorce decree awarded Ms. Bratcher the primary care and custody of the couple's minor child, a four-year-old boy. Surrette was granted specified visitation with the child which included every other weekend.
¶ 3. On September 17, 2000, the child returned from a weekend visit with his father. The child told his stepfather, E.J. Bratcher, that he needed to use the bathroom. His stepfather observed some strange behavior from the child when he went to wipe his bottom, which he relayed to the child's mother. Ms. Bratcher questioned the child who told her that when his father wiped him, "it hurt really, really, really bad." He told his mother that it hurt inside and outside and that his father, "scratched his booty with his fingernail."
¶ 4. The next day, Ms. Bratcher took the child to see Dr. Smoot for an examination. Dr. Smoot examined the child and found an anal tear. Dr. Smoot then contacted the Department of Human Services (DHS) and Jean Rogers from DHS came to the Bratcher home and began an investigation.
¶ 5. Based on this, Ms. Bratcher filed a petition to modify visitation and asked the court to restrict Surrette's visitation until further orders of the court. The chancery court entered a temporary order that required *895 supervised visitation pending a hearing on the matter.
¶ 6. At trial, E.J. Bratcher testified that on the night in question the child came home from visitation with his father and went to the bathroom. He said the child called him to come and help clean his bottom. He testified the child, "normally pulls himself off the commode and leans forward so I can help him wipe his booty and he didn't." He said the child bent over and had "both hands on his butt cheeks and was pulling his butt cheeks apart, and it just kind of shocked me...." He testified that he told his wife about the incident.
¶ 7. Ms. Bratcher testified that she questioned the child about the incident and asked him where he learned this behavior. She testified the child said it was something his father wanted him to do. She also testified the child said that it hurt when his father wiped his bottom and that it was different from when other people wipe it. Ms. Bratcher testified the child told her, "it hurts inside and outside, Mommy, inside and outside, and he scratched my booty with his fingernail." She also testified that the child had a small abrasion on his rectum when he was a baby and that the child had constipation off and on like all young children have.
¶ 8. Dr. Margaret Akin at the Rape Crisis Center in Memphis testified. Ms. Bratcher took the child to the Center based on DHS's recommendation. Dr. Akin examined the child and found a "partially healed laceration of the anus." She also testified the child's bottom funneled toward the anus, rather than staying relatively flat. Dr. Akin testified this was not a definite causal connection, but was associated with child abuse. She also stated constipation could be a cause of a rectal tear, but her findings were consistent with the history given to her by the child.
¶ 9. Mr. Paul Davey, a psychotherapist and counselor, testified that the child told Davey that his father had "hurt his booty." On another occasion, he said the child told Davey his father had asked him to "tickle his wee-wee." Davey also testified the child did not appear to have been "coached."
¶ 10. Surrette testified in his defense and stated that sexual abuse never occurred. He also testified he believed this anal tear was caused by the child's history of constipation. He testified extensively about the child's problems with constipation stating that he passed "big stools," which were too big for a small child. He also said the child would go two or three days without having a bowel movement. He said that almost every weekend he was with the child he had to give him a laxative. Surrette also testified there were times when the child would sit on the commode and scream in pain. He testified he was extremely close with his son and that his son was "a gift from God and I treat him that way. We have the best relationship I can imagine."
¶ 11. The chancellor also heard testimony from two individuals who supervised visitation. Both testified that Surrette had a loving relationship with his son. Both stated they never saw any behavior to indicate the child should not have overnight visits with his father. Additionally, they both testified about the child's problems with constipation.
¶ 12. The chancellor cited Mississippi law in his ruling which stated that in order to restrict visitation of a non-custodial parent, there must be sufficient evidence that a particular restriction is necessary to avoid harm to the child. The chancellor found the evidence before the court was clearly insufficient and fell short of the burden of proof which is preponderance of *896 the evidence. The chancellor denied Ms. Bratcher's request for modification and reinstated the custody arrangement in the divorce decree.

STANDARD OF REVIEW
¶ 13. Our scope of review in domestic matters is limited. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994). This is particularly true "in the areas of divorce and child support." Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). This Court is not called upon or permitted to substitute its collective judgment for that of the chancellor. Richardson v. Riley, 355 So.2d 667, 668-69 (Miss.1978). A conclusion that we might have decided the case differently, standing alone, is not a basis to disturb the result. Id.

ANALYSIS OF LAW

I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY DENYING MS. BRATCHER'S PETITION TO MODIFY VISITATION?
¶ 14. In cases where the terms of visitation are at issue, our familiar change in circumstances rule has no application. Cox v. Moulds, 490 So.2d 866, 869 (Miss. 1986). This is true because the court is not being asked to change the permanent custody of the child. Id.; Sistrunk v. McKenzie, 455 So.2d 768, 770 (Miss.1984). In Cox, the supreme court stated:
All that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interest of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.
Cox, 490 So.2d at 869.
¶ 15. Ms. Bratcher argues that above all else, the court must first protect the child with regard to custody and visitation and that it failed to do so. She asserts that compelling evidence was presented during trial that showed the child was "placed in harm's way" by returning him to unsupervised visitation with his father and that it was improper for the chancellor to question the credibility of the child. She also cites Lewis v. Butler, 794 So.2d 1015, 1018(¶ 16) (Miss.2001), which states that evidence of improper sexual advances toward a child is justification for denying visitation to the perpetrator.
¶ 16. The chancellor, by his presence in the courtroom, is best equipped to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994). When conflicting testimony on the same issue is presented, the chancellor sitting as trier of fact must determine which version he finds more credible. Id. "The weight and worth of a witness's testimony [is] solely for the chancellor to determine." Doe v. Doe, 644 So.2d 1199, 1207 (Miss. 1994) (citing Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987)). In cases such as this, the determination of whether the child suffered from sexual abuse is a question of fact to be decided by the chancellor. Id.
¶ 17. In the case sub judice the chancellor made the following findings of fact:

*897 Despite the mother's representations to the contrary, this child has a history of constipation and bowel movement problems far in excess of the typical child. These problems have required medication and physician examinations virtually since his birth. Rectal tears have been found on the child even in his diaper stage as reflected in the DHS, that is the Department of Human Services of Panola County file, which was admitted into evidence. Physicians have found these rectal tears to be consistent with the child's constipation.
¶ 18. He further noted that after one particular incident when the child returned from a supervised visit, Ms. Bratcher found blood in his underwear and called DHS, which promptly investigated. When the child was asked about the blood he said, "Daddy hurt my booty again." DHS determined that during the period in question, there was no opportunity for Surette to molest the child and the result of the bleeding was from constipation. The chancellor found "this puts the credibility of the child in question."
¶ 19. The chancellor determined that sexual molestation would justify a restriction, but found that based upon the testimony, "there is clearly insufficient evidence in order for this court to make that ruling."
¶ 20. As stated earlier, the determination of whether the child was sexually abused by his father is a question of fact to be decided by the chancellor. He found that substantial evidence showed the child's problems with constipation and painful bowel movements could have caused his injury, and the evidence submitted by Ms. Bratcher was insufficient to rebut this possibility. The chancellor had the opportunity to view the witnesses' demeanor and to determine whether the charges were true. In these types of cases in which one side alleges misconduct while the other denies any wrongdoing, the determination of the worth and credibility of the witnesses is solely for the chancellor. This Court cannot reverse unless we determine the findings of the chancellor were not supported by substantial evidence, an abuse of discretion existed, or the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. While this Court may have found differently if we were the trier of fact, we will not reverse such findings if there was substantial evidence supporting the chancellor.
¶ 21. After careful review of the record, we find substantial evidence existed to deny Ms. Bratcher's petition to modify visitation and that no abuse of discretion existed on the part of the chancellor. This Court affirms the chancellor's order.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.