GRIFFIS, P.J., for the Court:
¶ 1. Wesley Jaggers, the noncustodial parent, argues that the extracurricular activities of the children have interfered with his visitation. The chancellor denied a modification of custody but changed the visitation schedule. Wesley argues that the chancellor erred when he failed to: relieve Wesley of the obligation to allow the children to participate in extracurricular activities and adopt the guardian ad litem’s recommendation as to visitation. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Wesley Jaggers and Janet Jaggers Magruder were married on March 6, 1993. During their marriage, they had three children: Allie (born on August 16, 1996), Tanner (born on August 27, 1998), and Bo (born on November 20, 2002). They were divorced by a judgment dated April 18, 2004.
¶ 3. On July 27, 2004, Wesley and Janet presented the chancellor with an agreed order of modification, which was signed by Wesley, Janet, and their lawyers. Likewise, the chancellor signed and entered the order.
¶ 4. Since then, Wesley and Janet have been involved in what appears to be continuous litigation. They have filed claims seeking contempt and modification, and alleging abuse. As a result of the claim of abuse, the chancellor appointed Jonathan Martin as the guardian ad litem.
¶ 5. On June 20, 2009, the chancellor entered an order that ruled:
This Court entered an Agreed Order of Modification on July 27, 2004, which provided in part the following:
That each parent shall allow the children to attend and participate in the scheduled extra-curricular activities of each child, including baseball, speech therapy, etc., it being the intention of this paragraph that the children’s regular schedules be maintained so as to provide as great a degree of continuity as possible.
It is the order of the Court that until the completion of the hearing on the merits of this cause that the parties’ minor child Tanner shall be allowed to participate in his extracurricular activities pursuant to the terms of the Agreed Order of Modification entered by this Court on or about July 27, 2004.
The parties are further directed to communicate and to cooperate with one another to assure that all of their minor children are able to participate in extracurricular activities as provided for in the Agreed Order of Modification entered by this Court on or about July 27, 2004.
¶ 6. On November 19, 2009, the chancellor entered a judgment that ruled:
a. Janet’s motion to modify Wesley’s visitation was denied.
*967 b. As to Wesley’s counterclaim for contempt that alleged Janet interfered with his visitation, Janet was found in contempt.
c. As to Janet’s claim for contempt that alleged Wesley was in contempt for failing to take the children to their extracurricular activities, Wesley was found in contempt.
The chancellor then held that the contempt findings as to the imposition of sanctions were held in abeyance pending further review of the case. The chancellor then ruled:
Wesley Jaggers is obligated to continue taking the children to their scheduled extracurricular activities. In order to provide for any occurrence where compliance is impossible due to more than one child having an activity scheduled for the same time, the following will be added to the corresponding provision of the Agreed Order of Modification:
In the event that both boys have spring baseball tournaments in different places during the same weekend of Father’s visitation, Mother shall be allowed to take ... the children to their tournament. Father shall then be entitled to make-up time with the child who remained in Mother’s custody. The make-up time shall be the following Monday evening from 4:00 p.m. to 8:00 p.m., or such other arrangements as may be agreed upon by the parties.
The chancellor then stated that at the time of the hearing he would “consider the further imposition of sanctions as to the parties hereto[.]”
¶ 7. On July 23, 2010, Wesley filed a complaint for contempt and modification. Janet was served the complaint and filed an answer and a counterclaim for contempt and modification.
¶ 8. To resolve this litigation and to decide all of the claims and issues presented in the various motions and pleadings filed, the chancellor held a hearing that lasted several days. The central issue was Wesley’s claim that Tanner’s and Bo’s baseball travel schedules usurped Wesley’s visitation with them. According to the evidence presented, Tanner and Bo both played travel baseball since they were seven and six years old, respectively. In addition to the language of the July 27, 2004 agreed order, there was testimony that Janet and Wesley discussed the children participating in travel baseball, as an extracurricular activity, and agreed to it.
¶ 9. Travel baseball is competitive and required the boys to try out to make the team. The baseball season starts in March and is completed by July 4th of each year. Their normal schedule was to travel to play in tournaments: one in March, one or two in April and May, and as many as three in June. The baseball schedule is normally given to the parents by the end of February or the first of March.
¶ 10. There was also evidence that there were three occasions where Tanner and Bo played in tournaments in different locations at the same time. Also, if the boys repeatedly missed practices or games, there was a concern that they would not be allowed to play in future games.
¶ 11. Janet testified that she does not allow the children to participate in all of the sports and extracurricular activities in which they desire to participate. There was evidence that the boys chose baseball over soccer and Boy Scouts. Wesley testified about the instances when the boys’ baseball schedules interfered with his visitation time with them or precluded him from doing an activity or participating in a family event of his choosing.
¶ 12. The children received extensive counseling from Malachy McCool, a li *968 censed clinical social worker. McCool’s deposition was admitted as evidence. McCool expressed concern about the children’s distant relationship with their father due to Wesley’s efforts to make it difficult for the children to attend their extracurricular activities. Tanner had expressed his concern over losing his place on the baseball team due to his father’s unwillingness at times to take him to practice. McCool testified that participation in sports was very important to Tanner and that it would be emotionally harmful to Tanner if he was not allowed to participate in sports.
¶ 13. Based on the suggestion of the guardian ad litem, Wesley, Janet, and their children also sought counseling from Dr. Wyatt L. Nichols, a psychologist. In his report, Dr. Nichols expressed concern over Wesley’s struggle to deal with his inability to control his children’s schedule and his time with them due to their extracurricular activities. Dr. Nichols was especially concerned about how it was affecting the children, especially Tanner. Dr. Nichols noted that participation in sports was especially important to Tanner. In fact, Dr. Nichols opined that it would be emotionally harmful to Tanner if he was not allowed to participate in sports.
¶ 14. The evidence indicated that the children visited with Wesley every other week in the summer, when Wesley had no work obligations. At a minimum, Wesley has the children for visitation six to seven weekends per year and for two weeks in the summer when they have no scheduled activities. The guardian ad litem ultimately recommended that the provision of the modification order that required Wesley to take the children to their extracurricular activities be modified to release Wesley from this obligation, except as it related to Tanner’s and Bo’s attendance at baseball practices and games.
¶ 15. The chancellor dismissed Wesley’s claim for modification of custody at the conclusion of his case-in-chief. M.R.C.P. 41(b). This decision is not an issue in this appeal.
¶ 16. On December 16, 2011, the chancellor entered a final judgment. The chancellor denied Wesley’s request to modify visitation and maintained the requirement that Wesley allow the children to participate in their scheduled extracurricular activities, specifically baseball. The chancellor adopted a revised Farese visitation schedule for the children. Also, the chancellor adopted the recommendations of both the guardian ad litem and Dr. Nichols when he continued Wesley’s midweek visitation and allowed Wesley to make up visitation in the event that the children’s baseball activities were in two different places. It is from this judgment that Wesley now appeals.
STANDARD OF REVIEW
¶ 17. In domestic-relations cases, including cases involving child custody and visitation, this Court “will not disturb a chancellor’s judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]” Rolison v. Rolison, 105 So.3d 1136, 1137 (¶ 4) (Miss.Ct.App.2012) (citations and quotations omitted). Questions of law, however, are reviewed de novo. Price v. Price, 22 So.3d 331, 332 (¶ 8) (Miss.Ct.App.2009) (citation omitted).
ANALYSIS

1. Whether the chancellor erred in failing to relieve Wesley from the obligation to allow the minor children to participate in extracumcular activities.

¶ 18. Wesley argues that his visitation has been usurped by the children’s travel *969 baseball teams and other extracurricular activities. He contends that Janet is allowed to control his visitation, and as a result, he is left with little direct contact with his children. Wesley claims that he is not allowed to control the visitation sufficient to foster a close parent-child relationship.
¶ 19. It is well-settled law in Mississippi that in matters of child custody and visitation, “the chancery court enjoys a large amount of discretion in making its determination of what is in the best interest of the child.” Ellis v. Ellis, 840 So.2d 806, 812 (¶ 24) (Miss.Ct.App.2003) (quoting Clark v. Myrick, 528 So.2d 79, 82 (Miss.1988)). A chancellor’s consideration of "visitation “must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child.” Id. (quoting Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994)).
¶ 20. Further, a chancellor’s modification of a visitation order, in addition to requiring a showing that it would be in the best interest of the child, must be based on evidence that the prior decree is not working. Id. at (¶ 25) (citing Suess v. Suess, 718 So.2d 1126, 1130 (¶ 15) (Miss.Ct.App.1998)). This Court has previously held that “a visitation schedule that adversely affects a child’s emotional stability is one that is not working[.]” McCracking v. McCracking, 776 So.2d 691, 695 (¶ 11) (Miss.Ct.App.2000).
¶ 21. Wesley argues that a noncustodial parent’s right to visitation is “a right more precious than any property right.” Mord v. Peters, 571 So.2d 981, 983 (Miss.1990). Mississippi law provides that a noncustodial parent is entitled to significant visitation with a child under circumstances that foster a close relationship. See, e.g., Harrington, 648 So.2d at 545. Visitation should be sufficient to create an environment “conducive to developing as close and loving a relationship as possible between parent and child.” Chalk v. Lentz, 744 So.2d 789, 792 (¶ 9) (Miss.Ct.App.1999). In Cox v. Moulds, 490 So.2d 866, 867-68 (Miss.1986), the Mississippi Supreme Court explained the scope of visitation rights as follows:
This appeal presents an important question regarding the authority of the [cjhancery [c]ourt to place restrictions upon a non-custodial parent’s exercise of visitation rights with his or her children. We decide the case by reference to the view of our law that, however denominated, the visitation rights of the noncustodial parent should be tantamount to custody with respect to the place and manner of exercise of same, except in the most unusual circumstances. Because something approaching actual danger or other substantial detriment to the children — as distinguished from personal inconvenience or possible offense to middle class sensibilities — is required before a chancellor may restrict visitation to the home of their maternal grandmother, we reverse.
Absent extraordinary circumstances, the noncustodial parent during visitation should have “broad authority and discretion with respect to the place and manner” of visitation. Id. at 870. Wesley contends that Janet, as the custodial parent, is not entitled to dictate the children’s schedules or participation in activities during visitation. See Ellis v. Ellis, 840 So.2d 806, 813 (¶ 28) (Miss.Ct.App.2003) (custodial mother not entitled to require participation in activities during visitation). Similarly, Wesley cites the proposition that “[djuring visitation, the non-custodial parent should have decision-making rights regarding the child’s activities, schedule, discipline, and *970 religious training.” Deborah H. Bell, Bell on Mississippi Family Law § 12.08 (2d ed.2011).
. ¶ 22. This case presents a matter that is not unusual among divorced parents and their children. As children get older, they want more say about where they go and what activities they participate in. As a result, the Farese visitation schedule is not as easily complied with as it was when the children were younger.
¶ 23. Here, we must consider two important legal concepts. Janet urged the chancellor to make the decision based on what is in the “best interest of the children.” Wesley urged the chancellor to protect his “precious right” of visitation to allow him to foster a strong father-child relationship. The parties properly brought this controversy to the attention of the chancellor and asked for resolution.
¶24. The chancellor’s oral opinion began with the following statement:
[T]he primary consideration for this Court [is] for these three children. I am very much concerned with Allie, Tanner and Bo, and I hope that it will be construed, whatever I do here today, as being in their best interest because that’s the sole intent of this Court.
This judgment will not be necessarily for the convenience of the parties themselves. This Court has delayed this matter even on rulings until this day, and I apologize for any inconvenience it has caused counsel or parties. But I’ve done that in a hopeful effort that they get by the summer, this past summer with the baseball scheduled] of these young children, particularly those involved in the baseball aspects of it, and in hope that some resolution could be made by the parties themselves, but obviously those efforts have been exhausted and have come to nothing.
With this in mind, we review the chancellor’s decision to determine whether it was supported by substantial evidence from the record. The chancellor’s decision appears to have struck a balance between the best interests of the children and preserving Wesley’s unencumbered visitation time with his children.
¶ 25. We note that the chancellor did not change the parties’ earlier agreement as to the children’s activities. Thus, we must start with the Agreed Order of Modification, entered on July 27, 2004, where Wesley and Janet agreed:
[.E]ach parent shall allow the children to attend and participate in the scheduled extra-curricular activities of each child, including baseball, speech therapy, etc., it being the intention of this paragraph that the children’s regular schedules be maintained so as to provide as great a degree [of] continuity as possible.
(Emphasis added).
¶ 26. To support the chancellor’s decision, there was evidence Wesley had knowledge of the boys trying out for and being selected to play travel baseball, and he did not object. There was also evidence that the children were allowed to have input in determining their extracurricular activities, and they were required to choose their activities as opposed to participating in all available activities. Wesley’s work schedule allowed him extensive time to visit with the children, due to having alternate weeks off from work, without being interrupted by work obligations or the children’s extracurricular-activity schedule. In addition, the guardian ad litem and others testified that the boys were athletically gifted and possessed a love for and a strong commitment to the game of baseball. In fact, there was much evidence that it was important to the boys that they make their regularly scheduled baseball games and practices. There was *971 concern of possible emotional harm to the boys if their participation in baseball was stopped, and the negative effect it would have on their relationship with their father.
¶ 27. The chancellor’s decision allowed the boys to continue their participation in travel baseball and allowed Wesley to make up visitation if the boys’ baseball schedule interfered with his visitation. As a result, the chancellor increased Wesley’s visitation, as he awarded four weeks of summer visitation as part of the Farese schedule, upheld Wesley’s midweek visitation, and followed the guardian ad litem’s recommendation to allow make-up visitation on Mondays if the boys’ baseball schedule interfered with his visitation.
¶ 28. We find that the chancellor’s judgment was properly within his discretion. Accordingly, we find that this issue has no merit.

2. Whether the chancellor erred by not adopting the recommendations of the guardian ad litem as to Wesley’s visitation with the minor children.

¶ 29. Wesley next argues that the failure of the chancellor to follow the guardian ad litem’s recommendation as to visitation and the children’s extracurricular activities was reversible error.
¶ 30. This Court has held that it is not an abuse of discretion for the chancellor to refuse to adopt the exact recommendations of the guardian ad litem on the issue of visitation. Henderson v. Henderson, 952 So.2d 273, 279 (¶¶ 14-15) (Miss.Ct.App.2006). Further, the supreme court has ruled that a chancellor must include a summary review of the guardian ad litem’s recommendations and, while not bound by those recommendations, must include in his findings his reasoning for rejecting the guardian ad litem’s recommendations. Floyd v. Floyd, 949 So.2d 26, 29 (¶ 8) (Miss.2007) (citations omitted).
¶ 31. Here, the chancellor’s decision adopted most of the guardian ad litem’s findings and recommendations. The chancellor incorporated the guardian ad litem’s recommendations in his opinion. In his bench opinion, the chancellor specifically noted his differences from the recommendations of the guardian ad litem. In particular, he noted that he ordered the adoption of the Farese visitation schedule and the original extracurricular-activity provision as the final visitation schedule because it was specific, and because it was in the best interests of the children. Yet the chancellor allowed Wesley to continue his midweek visitation on Tuesdays, along with make-up visitation on Mondays if the children’s baseball schedule posed a conflict.
¶ 32. We find that the chancellor was well within his discretion in making his decision that actually incorporated most of the recommendations of the guardian ad litem. The chancellor thoroughly explained his reasoning for the decision in the bench opinion as well. As a result, we find that this issue has no merit.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. JAMES, J., CONCURS IN PART.